KINGS GENERAL TERM, November, 1847. *Strong, Morse, and Barculo,* Justices.

## THE MAYOR, &c. OF NEW-YORK *vs.* BUTLER.

Where appraisers are chosen by parties to determine the amount of a claim arising under an agreement between them, with power to such appraisers to appoint an umpire to decide between them in case of their disagreement, they may appoint such umpire immediately, without waiting until a disagreement has arisen between them.

It is not a valid objection to an award made upon such a submission, that one of the appraisers signed the same, with the umpire. The authority originally given to the appraisers ceases upon the appointment of an umpire by them ; and if either

of them subsequently signs the award, his signature is a mere nullity. The award is the act of the umpire.

Where a submission merely authorizes the arbitrators to determine the amount due to one of the parties, they are only authorized to ascertain and fix that amount. They have no right to impose any condition upon the payment of it.

Where the operative part of an award differs, in terms, from the submission, but the recital refers correctly to the submission, the recital will raise a presumption that the award is in accordance with the submission. But the inference is not very strong, and may be rebutted.

It is a general rule that where the terms of a written instrument denoting the subject matter are equivocal, parol evidence may be admitted, to apply them to a particular subject matter.

An award is not rendered void merely because it does not appear from the award that one of the parties had notice of the time and place when and where the arbitrators met. A want of such notice may be proved, or it may appear expressly from the award; and then the objection would be fatal. But where it does not appear, it will not be presumed.

Where an award is indefinite as to the subjects investigated and determined, parol evidence is admissible to show that the arbitrator has exceeded his authority, and that therefore his award is null and void.

It is well settled that the evidence of an arbitrator cannot be received to impeach his own award. But the rule does not apply to a person originally appointed an arbitrator, but whose powers have been terminated by the appointment of an umpire, by whom the award was made.

The testimony of an arbitrator may be received to show that the arbitrators did not take a particular subject matter into consideration. That would not be an impeachment of the award, unless *mala fides* should be alleged.

Where a submission to arbitrators of a claim arising upon a building contract, on the part of the builder, relates exclusively to the additional cost occasioned by an *alteration* in the form or construction of the building as contemplated by the original design, the umpire has no right to make allowances, by way of deduction against the builder, for workmanship and materials alleged to be defective in those parts of the building not embraced in, or affected by, the alterations; especially where the claim of the builder for constructing those parts of the building has been settled, and paid.

If it appears from the face of an award that the arbitrators have included in it matters not referred to them, it is void, unless the amount of the items properly allowed can be ascertained, and separated from those not allowable.

An appointment of arbitrators originally good may become void by subsequent events.

After arbitrators have made a void award, a party has a right to consider the powers conferred upon them as virtually annulled, and to call for the selection of new arbitrators. He is not bound to renew the investigation before arbitrators who have already formed an opinion, and expressed it in a solemn manner.

Where an agreement provides that certain claims arising under the same shall be submitted to arbitrators, for their determination, and an actual submission to arbi-

The Mayor, &c. of New-York *v.* Butler.

trators is made accordingly, which proves ineffectual, and the award made by them is null and void, and the arbitrators have become virtually incompetent to act, the rights of the parties remain the same as if there had been no appointment, or award, at all. And if, in such a case, either party refuses to join the other in making a new selection of arbitrators, he may be sued in an action at law by the other party, to recover the amount of his demand.

No party can insist upon a condition precedent when its non-performance has been caused by himself.

There may be an effectual waiver by parol of a condition specified in a written, or even in a sealed, contract.

The action of debt can in general be maintained for money due on a contract whenever the demand is capable of being readily reduced to a sum certain, upon the predicated statement of facts. And it is not necessary that every part of the plaintiff's claim should be established on the trial. The plaintiff may, in this form of action, recover less than the sum stated in his declaration to be due.

ERROR to the superior court of the city of New-York. An agreement was entered into on the 11th of May, 1835, between Butler, the defendant in error, and the mayor, aldermen and commonalty of the city of New-York, for the erection and completion by the former, of a certain public building called the Halls of Justice, upon the plan, and for the sum of money, therein specified. And it was further agreed that in case any *alteration* in the form, proportions, or construction of the building, or work, as described in the specification and drawings should be determined upon by the superintendent or architect, by which the cost of the work or building might be diminished or increased, the amount of such diminution or increase should (in case Butler and the said superintendent or architect did not mutually agree upon the same,) be determined by impartial appraisers to be chosen, one by the said Butler, and the other by the said superintendent or architect, or by an umpire to be appointed by such appraisers, to decide between them in case of their disagreement; and that such diminution or increase, being so agreed upon or ascertained, should be deducted from, or added to, the amount to be paid to Butler for erecting and completing the building. Butler brought an action of debt against the corporation, upon this agreement, alleging in his declaration, that certain alterations were made by the direction of the superintendent or architect; that they increased the cost; that he and

the superintendent or architect did not agree upon the amount; that there.had been an actual submission to arbitration, which had proved ineffectual; that he had subsequently offered to appoint an appraiser on his part, and requested the corporation to appoint another, which they had refused to do; and that such increase of cost amounted to a specified sum, which he claimed to recover. The defendants pleaded the general issue.

Upon the trial it was admitted in evidence, by the defendants, that the building mentioned in the written contract was erected by the plaintiff; and it was mutually admitted in evidence by the respective parties that the plaintiff had been paid the principal sum specified in the contract, for erecting such building. And the plaintiff proved that alterations of the character mentioned in the contract were in fact made, at the request of the defendants, and the amount properly allowable therefor, over and above all proper allowances to the defendants by way of deduction. It was proved on the part of the defendants, that on the 17th of February, 1838, a paper was executed by Butler, John Haviland, the superintendent or architect, and D. D. Williamson, the comptroller of the city, which, after referring to the agreement of the 11th May, 1835, for the erection of the building, and reciting its provisions, certified that the said Butler had nominated Thomas Thomas, and that the said superintendent had nominated Peter J. Bogert, appraisers to make the appraisement, and in the event of their disagreement, to appoint an umpire to decide between them, in pursuance of, and according to the true intent and meaning of the said articles of agreement. Bogert and Thomas took the oath faithfully and impartially to perform the duties of appraisers, on the 2d of March, 1838, and on the same day they mutually nominated and appointed Alexander Lawrence an umpire to decide between them in case of their disagreement; who accepted the appointment and took a similar oath of office. The defendants also gave in evidence an appraisement made in pursuance of the submission, in the following words:

"New-York, April 23d, 1838.

"We the undersigned appraisers chosen to examine and value the extras and omissions caused by reason of alterations in the form and construction of the buildings called "The Halls of Justice," as provided for in the contract for said buildings, between Horace Butler and the mayor, aldermen and commonalty of the city of New-York, dated the 11th day of May, 1835, having carefully examined and valued the said extras and omissions, do hereby determine that the said Horace Butler *is entitled to receive* from the mayor, aldermen and commonalty of the city of New-York, the sum of twenty-three hundred and eighty-five $\frac{29}{100}$ dollars, for the increased cost of said building, *after he the said Horace Butler shall have filled up the outside paved ways.*

"Whereunto we have set our hands and seals on the day and date first written,                 PETER J. BOGERT,    [L. S.]
                                                                [L. S.]
                    ALEX'R LAWRENCE, [L. S.]"

The plaintiff, before the reading thereof to the jury, objected to the reception in evidence of this appraisement on the following grounds: *First,* That it was not the act of the umpire, but of the umpire and another person jointly. *Secondly,* That the appraisers first appointed, had no power to select and appoint an umpire until some disagreement had arisen between them. *Thirdly,* That the same did not purport to be an appraisement or ascertainment of the diminution or increase of cost consequent on alterations in the form, proportions, or construction of the building, determined upon by the architect or superintendent during the progress of the building or work specified in the contract, but purported to be an award, as upon a general submission to arbitration of differences between the parties. *Fourthly,* That the paper, whether regarded as an award or appraisement, was by reason of the words " after the said Horace Butler should have filled up the outside paved ways," irregular and void, as failing finally to determine the matter submitted.   The superior court overruled the objection, and

admitted the appraisement as competent evidence, and the same was read to the jury. The defendants having rested their defence, the plaintiff insisted that the appraisement could not be effectual for any purpose unless the defendants proved that the plaintiff had notice of the meetings of the appraisers, or umpire, to hear and examine the matter, and that the defendants were bound to show such notice; but the court decided that it was not necessary to the validity of the appraisement that such proof should be given by the defendants.

The defendants then rested, and the plaintiff proposed to prove' that the appraisers had, in making up the appraisement, allowed to the defendants, against the plaintiff, a large sum for alleged defective workmanship and materials generally, in those parts of the building erected under and in conformity with the contract, specifications and drawings, which had not been altered in form, construction or proportions, by the determination of the architect or superintendent; but to this the defendants objected, and insisted that the appraisement was conclusive, upon the trial of the issue, and could not be impeached by extrinsic evidence, and that the evidence so offered by the plaintiff was not admissible. But the court overruled the objection and admitted the testimony.

The plaintiff called as a witness Thomas Thomas, who testified that he was one of the appraisers originally appointed; that he attended the meetings of the appraisers until they made up the amount of the appraisement, and were to meet next day and sign the appraisement; that he was not present when they signed the appraisement, but he saw it soon after it was signed; that the appraisers had a great many meetings; that they met almost every day for six or seven weeks; that the plaintiff was not present at the last three or four meetings; that the plaintiff was not present at most of the meetings, but along at the first was present at several meetings; that witness acted as clerk, and kept the accounts of the items considered and allowed by the appraisers; that he objected to items, and as he went along put a mark before certain items, and when they had finished he protested against these; that the other appraisers offered to

The Mayor, &c. of New-York *v.* Butler.

make some deduction if witness would sign the report, but he, witness, declined; that the account kept by witness was made up and a balance struck; that it was so long ago he could not remember the amount, but it was the same amount of which the appraisement, which he saw soon after, was signed; that at the last meeting which he, witness, attended, the other two appraisers agreed upon this sum, and nothing remained to be done but to get the award written, and to sign it. The plaintiff's job was done and finished and delivered to the defendants, in October, 1837, but the plaintiff, early in the next year, returned and did some work which Mr. Haviland, the architect, required to be done to satisfy him. That the appraisers, in making up their appraisement, made allowances by way of deduction against the plaintiff for workmanship and materials alleged to be defective in those parts of the building which had not been altered from the form, proportions or construction provided by the original plans and specifications; that an instance of this was one of the items witness protested against for defective workmanship upon certain columns. That the appraisers allowed against the plaintiff several hundred dollars for this, he thinks somewhere about fourteen or sixteen hundred dollars; that the architrave over the columns was considered not to be properly constructed, to which the architect made no objection, and a like deduction was made for this defect, the amount of which he could not recollect.

The plaintiff having again rested his case, the defendants, by their counsel, insisted, 1. That the appraisement was conclusive, and could not be impeached in a court of law. 2. That if it could be so impeached, still that it should be first set aside in some way before an action would lie. 3. That if the award or appraisement were set aside, or were void for any cause, the submission remained in force, and the plaintiff could not revoke or annul it, but was bound to procure a new appraisement before he could claim, or recover, from the defendants. 4. That by the terms of the contract, an appraisement was necessary before the plaintiff could recover for any extra work. 5. That even if the appraisement were void, and the submission revoked

The Mayor, &c. of New-York *v.* Butler.

or annulled, the evidence given of the refusal of the defendants or their agents to appoint new appraisers, would not entitle the plaintiff to recover in this action ; but that the action of debt was not the proper remedy ; and 6. That Thomas Thomas was not the proper witness to show what claims, items or amounts were allowed or included in the appraisement, but that Bogert and Lawrence, who made the appraisement, should have been called for that purpose. On all which grounds the defendants moved for a nonsuit, or that the judge should charge the jury in conformity with the said points. That motion was denied ; and the cause being submitted to the jury they found a verdict for the plaintiff for $25,000 debt, with six cents damages and six cents costs ; for which amount judgment was entered against the corporation ; and they brought their writ of error.

*J. T. Brady & Willis Hall,* for the plaintiffs in error.

*F. W. Boardman & C. O'Conor,* for the defendant in error.

STRONG, P. J. delivered the opinion of the court. It is objected by the defendant in error, that the selection of an umpire by the appraisers appointed by the parties was premature. If the question had not been settled adversely to this objection, I should have thought it entitled to great consideration. It was certainly intended by the parties that the appraisal should be made by the individuals selected by them, if possible, before requiring the interposition of another. They were bound, as I conceive, to make the attempt to agree. Had they done so without first calling in a third person, possibly they might have concurred. The umpire, sitting and acting with them from the beginning, may have prevented their agreement. Had the parties intended that there should be three appraisers at first, and that the judgment of any two of them should be binding, they would have said so in their original contract, and made the selection accordingly. However, the authorities are against the objection, and we are bound to overrule it.

The Mayor, &c. of New-York v. Butler.

It is not a valid objection to the award that one of the appraisers signed it with the umpire. The authority of the appraisers originally appointed by the parties ceased upon their disagreement and selection of an umpire; but the signature of either was a mere nullity. It was still the act of the umpire. The case of *Soulsby* v. *Hodgson,* (3 *Burr. Rep.* 1474,) is in point, and settles the question. But although I concur with the court in that case, in the point decided by them, yet I by no means agree with them in the reason which they assign. I do not think that an umpire has a right to take what advice, or opinion or assessor he pleases.

The provision in the award, that the plaintiff below would be entitled to receive the sum awarded, after he should have filled up the outside paved ways, was intended as a condition. But the arbitrators had no power to impose it. It was simply void. If unperformed, it would not have prevented the recovery of the money. And as it could injure no one, it did not vitiate the award.

The operative part of the award differs, *in terms,* from the submission. By the contract, the appraisers were to determine the amount of the diminution or increase of the cost of the building caused by the alterations from the original design. The award is that Mr. Butler is entitled to receive the sum of $2385,29 for the increased cost of the building. This was not saying, expressly, that the sum awarded was the actual amount of the increase of the cost caused by the alterations. But as the recital refers correctly to the contract, that raises a presumption that the award was in accordance with the submission. The inference however is not very strong, and is far from amounting to the *presumptio juris et de jure* which cannot be rebutted. It would not contradict the award to prove that the arbitrators thought that a considerable part of the amount of the increase of the cost caused by the alteration should be set off against some deficiency in other parts of the work, and that therefore the plaintiff below was not entitled to receive that part of such increase. Indeed it is apparent from the whole case that the umpire so thought, and acted accordingly.

It is a general rule, that when the terms of a written instrument denoting the subject matter are equivocal, parol evidence may be admitted to apply them to a particular subject matter. (3 *Stark. on Ev.* 1021.)   There is nothing in the objection that it does not appear from the award that the plaintiff below had notice of the time and place when and where the arbitrators met.   A want of such notice may be proved, or it may appear expressly from the award; and then the objection would be fatal.   But it does not appear in this case, nor is it to be presumed.   The result is that there is not enough on the face of the award to show that it goes beyond the submission; neither is it sufficiently precise to shut out parol evidence that the umpire went beyond his authority.

The plaintiffs in error contend that the parol evidence to show that the umpire had exceeded his authority was improperly admitted by the court below.   I have already stated one reason why I think that such evidence is admissible.   The object was to show that the umpire had no jurisdiction, and that therefore his award was null and void.   The subject matters referred to the appraisers were clearly and distinctly stated in the contract.   And no extrinsic evidence as to them was admitted or offered.   Clearly such evidence, if offered, would not have been admissible.   It is unnecessary to determine whether, if the award had clearly described the matters decided, parol evidence would have been proper to contradict it in that particular.   In this case the award was indefinite as to the subjects investigated and determined.   If the arbitrators exceeded their authority, and thereby did injustice to the plaintiff, that is not apparent upon the face of the award, and can be proved by extrinsic evidence only.   If that cannot be admitted, the injured party would be remediless.   I know of no rule of law that would exclude it.   But it is said that a court of law cannot vacate or set aside an award.   True, but it is not necessary to annul an alleged award that never had any vitality.   An award, if it may be so called, made by persons without authority, is a nullity; and may be so declared by any court before which an attempt is made to enforce it.   Besides, the court for the cor-

rection of errors, when this case was before that tribunal,(*a*)
expressly decided that the evidence in question was competent,
and I cannot see why the question was again raised in the
subsequent trial in the court below.

It has been contended by the plaintiff in error that Thomas
was an incompetent witness, inasmuch as his testimony would
go to impeach the award, and because, even if the testimony
of an arbitrator was admissible, his was not the best evidence
which could have been adduced. It is well settled that the
evidence of an arbitrator cannot be received to impeach his
own award. But the witness never made the award in ques-
tion. It was not his, but was made in opposition to his own
opinion. After the final disagreement between him and his
associate, preceded as it was by the selection of an umpire, his
power ceased. He was no longer an arbitrator. Besides, the
evidence of arbitrators has often been admitted to show that
they did or did not take into consideration any particular sub-
ject matter. That would not be an impeachment of the award,
within the principle, unless *mala fides* should be alleged. The
other objection to his competency was equally untenable. He
had as good opportunities for knowing, and did know, as much
of the matter concerning which he testified, as any other man.
He testified that he acted as clerk, and kept the account of the
items considered and allowed by the appraisers; that the ac-
count kept by him was made up, and a balance struck; that
the amount was the same for which the appraisement was
made, and that at the last meeting which he attended, the
other two appraisers agreed upon this sum, and nothing re-
mained to be done but to have the award written and signed.

The witness proved very clearly that the umpire included in
the award matters which had not been submitted by the par-
ties. The submission related exclusively to the cost which
might be caused by the alteration from the original design.
But the umpire made allowances by way of deduction against
Mr. Butler for workmanship and materials, alleged to be defec-

(*a*) 7 *Hill,* 329, *S. C.*

The Mayor, &c. of New-York v. Butler.

tive in those parts of the building which had not been altered from the form, proportion or construction provided by the original plans and specifications, and which had not been in any manner affected by the alterations actually made. These matters had not been referred to him; and the allowance was the more improper, as all except what related to the alterations had been settled and paid for.

But it is said that the good may be separated from the bad, that the amount of the items properly allowable can here be ascertained from the account kept by the witness Thomas, and that such amount should control the recovery. But the answer to that is that there has not been any formal adjudication as to the amount properly allowable under those items. The account contains a mere estimate. Neither party could make use of it by way of charge or discharge. It was not conclusive evidence of the amount due.

It was contended in behalf of the defendants below, that if the award was void, the appointment of the appraisers remained valid, and that the plaintiff had no right to annul the powers conferred upon them, or to call for the selection of others. An appointment originally good, may become void by subsequent events. Had one of the arbitrators, after the selection, and before making the award, become deranged, or interested in the subject matters of the claim, either event would have rendered him incompetent, and virtually annulled his appointment. The agreement between these parties expressly provided that the amount should be settled by *impartial* appraisers. If either party had selected one known by such party to have formed an opinion favorable to his interest, it would have vitiated the award. The other party would not have been bound by it. In this case the appraisers were doubtless impartial when originally appointed. But they had subsequently formed an opinion, and expressed it in a solemn manner. They would naturally strongly incline to such opinion on any future investigation. They could not be the impartial men to which both parties are entitled. As jurors, they would certainly have been disqualified. The same rule should apply

The Mayor, &c. of New-York *v.* Butler.

to arbitrators; more especially as their award is of more binding effect than the verdict of a jury. The plaintiff was, therefore, under the circumstances, justified in considering the first selection as virtually annulled, and in calling for a new appointment; and the defendants should have yielded to his request. But the defendants not only refused to make any new appointment, but virtually refused to renew the investigation before the same arbitrators, by insisting that the appraisal already made was valid, and that it should control the extent of the claim. Their agent, at the time appointed by the plaintiff for the proposed new selection, tendered to him the amount which the appraisers had adjudged to him, and expressly avowed that he had nothing further to say on the subject.

If the award was null and void, and the appraisers and umpire had become virtually incompetent to act, the rights of the parties remained the same as if there had been no appointment or appraiser at all. The application made by the plaintiff to the defendants below, to meet and make a new appointment of appraisers on the 10th of May, 1838, was virtually refused, and, as it appears to me, without any sufficient reason. The question then occurs whether the refusal can prevent the recovery by the plaintiff of money justly due to him. It ought not to have that effect. It certainly cannot be seriously contended that a debtor can, by refusing to arbitrate as to the amount due pursuant to a contract, forever prevent his creditor from recovering a just demand. If the appraisal is a condition precedent and is of so rigid and unbending a character that it must be performed before payment can be enforced, a refusal to arbitrate by the corporation would be a perpetual bar. It is well settled that a court of equity cannot compel a specific performance of an agreement to arbitrate. (6 *Ves.* 818.) If an attempt should be made to recover the value of the work, in any shape, at law or in equity, it could be met with the answer which the defendants now make, that the value of the work cannot be assessed in any manner except that provided by the parties. I conceive, however, that no party can insist upon a condition precedent when its non-performance has been caused by himself. Such

non-performance would not prevent the vesting of an estate; nor can it prevent the accruing of a right, or its enforcement by an action. It in effect amounts to a waiver. That there may be an effectual waiver by parol, of a condition specified in a written, or even a sealed, contract, there can be no doubt. (*Fleming* v. *Gilbert,* 3 *John. Rep.* 528, *and the cases there cited.*) In the principal case, Judge Thompson, in giving the opinion of the court, said, " It is a sound principle that he who prevents a thing being done, shall not avail himself of the non-performance he has occasioned." The contract between the parties was substantially that the plaintiff should make such alteration in the form, proportion or construction as described in the specification, as should be authorized by the superintendent or architect, in writing; and that he should deduct from the contract price for any diminution, or receive in addition thereto any increase, of the cost which might be effected by such alteration; and that if he and the superintendent or architect, did not agree upon the amount, that should be determined by impartial appraisers, one to be chosen by each party, or, in case of their disagreement, by an umpire to be chosen by the appraisers. The plaintiff below alleges that such alterations were made pursuant to the required authority; that they increased the cost; that he and the superintendent or architect did not agree upon the amount; that there had been an actual submission to arbitration which had proved ineffectual; that he had subsequently offered to appoint an appraiser on his part, and requested the defendants below to appoint another, which they had refused to do; and that such increase of cost amounts to a specified sum, which he claims to recover. It was proved that alterations such as were referred to in the contract were in fact made, and the amount of the increase of cost, after all proper deductions, was also established. And also the offer to the defendants, and a refusal, in effect, by them, to arbitrate as to such amount. It was contended by the counsel for the defendants, that there was no proof, on the trial, that the alterations had been authorized by the requisite writing. The bill of exceptions states that the plaintiff below gave evidence that the extra work was

The Mayor, &c. of New-York *v.* Butler.

done, and the extra materials were furnished, at the request of the defendants below. The inference certainly is that the request was made in due form. Besides, the corporation admitted that by selecting appraisers, in the first instance, to value the extra work and materials; and by the neglect to raise the objection on the trial, which, had it been raised, could probably have been removed by producing the required evidence, they had waived the objection; and it is too late to raise it on a writ of error.

The performance of the extra work, pursuant to the contract, gave to the plaintiff a valid claim against the defendants for the increased cost. The amount only was to be settled by arbitration. That was for the mutual benefit of the parties, and might be waived by them. If waived, by both parties, as I think it eventually was, the plaintiff below might sustain his action, in the same manner as if the clause providing for such arbitration had not been inserted in the contract. I do not go any further than that: nor is it necessary that I should do so. I do not mean to say that the mere performance of the work itself, gave the plaintiff a right of action for what it was worth. But I am clear, that as there had been an actual reference which had proved ineffectual, and a subsequent proposal by the plaintiff to refer, and a refusal by the defendants, the right of action has fully attached. (2 *Atk. Rep.* 585. 2 *Bro. Ch. Rep.* 336.)

It has also been contended on the part of the plaintiffs in error, that, supposing that the defendant in error had, under the circumstances, a valid claim against them, he could not recover it in an action of debt. The ground of the objection is that the amount was unsettled. There could not well be any other to the form of the action; as debt can clearly be maintained for the value of work performed under a contract, whether sealed or unsealed, or whether written or verbal. The distinction is between a claim for the actual value of the work, and one where the plaintiff seeks to recover unliquidated special damages for the breach of a contract. The former is a debt, the latter is not, until settled by a judgment. The action

of debt can, in general, be sustained for money due on a contract, wherever the demand is capable of being readily reduced to a sum certain, upon the predicated statement of facts. It matters not whether every part of the alleged claim is established on the trial or not; as it is now settled that the plaintiff may, in this form of action, recover less than the sum stated in his declaration to be due. There is nothing stated in the declaration, nor is there any thing in the evidence, to show that the demand of the plaintiff below is incapable of being reduced to a sum certain.

The judgment of the court below must be affirmed, with single costs.

---

NEW-YORK GENERAL TERM, November, 1847.  *Hurlbut,*
*McCoun, and Mason,* Justices.