The City of Chicago

*v.*

The Chicago and Western Indiana Railroad Company.

*Filed at Ottawa November 20, 1882.*

1. Contracts—*condition subsequent.* Where the act on which an estate or right depends does not necessarily precede the vesting of the estate or right, but may accompany or follow it, the condition is a condition subsequent,—not a conditional limitation.

2. Same—*when performance prevented—right becomes absolute.* The rule at law is, that if a condition subsequent is possible at the time of making it, and becomes afterwards impossible, by the act of God, or the law, or the grantor, the estate having once vested is not thereby divested, but becomes absolute. It is said, however, that equity will not apply the principle to the extent of the last particular, to make the estate absolute.

3. Same—*application of the rule.* So where a city granted a license to a railway company to construct its road across the streets, upon an express condition that the tracks authorized should be constructed within one year from the time of the grant, and the company was prevented from completing its track within the year from injunctions, and also by the police officers of the city, acting under the direction of the mayor, it was *held,* the right of the company under the grant was not lost, and the city might be enjoined from interfering with the laying of the track after the expiration of the year, when it is apparent that the same would have been completed within the time limited had it not been prevented by operation of law and the acts of the city authorities.

4. Municipal corporation—*when bound by acts of its officers.* The unauthorized acts of municipal officers are regarded as the acts of the corporation, when they are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation upon the subject to which the particular act relates.

5. Decree—*construed.* A decree enjoining a city from interfering with the construction and operation of a railway through certain streets, can not be construed to prevent the city from the exercise of any legal remedies to prevent the laying of the railroad track across school lots without acquiring the right of way over the same.

6. Ordinance—*construed, as to leasing railroad to other companies.* An ordinance giving a railroad company license to construct its track across and along the streets and alleys of a city, upon the condition it shall permit any other companies, not exceeding two in number, to use its main track, upon such fair and equitable terms as may be agreed upon, will not be construed as prohibiting the company from leasing the use of its track in the city to more than two other companies. Such provision is a limitation, not upon the right of the company to admit other companies to a joint use of its track, but upon the exclusive enjoyment of the estate granted by the city.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding.

Mr. Francis Adams, and Mr. J. L. High, for the appellant:

The time granted within which to complete the road was not a condition subsequent, but a conditional limitation, self executing, under which the license terminated absolutely upon the happening of the event named. 2 Washburn on Real Prop. 20, 24; 4 Kent's Commentaries, 127; 2 Blackstone's Commentaries, 155; Mills on Eminent Domain, sec. 58; *N. Y., H. and N. R. R. Co.* v. *B. H. and E. R. R. Co.* 36 Conn. 196; *In re B. W. and N. R. R. Co.* 72 N. Y. 245; 75 id. 335; *Brooklyn S. T. Co.* v. *City of Brooklyn,* 78 id. 524; *Green* v. *Green,* 34 Ill. 320; *Chicago City Ry. Co.* v. *People,* 73 id. 541; *Oakland R. R. Co.* v. *Oakland B. and F. V. R. R. Co.* 45 Cal. 365; *Morris and Essex R. R. Co.* v. *Central R. R. Co.* 2 Vroom, 205; *Regina* v. *London and N. W. R. R. Co.* 6 Eng. L. & Eq. 220; *Glamorganshire Canal Co.* v. *Blackmore,* 1 C. & F. 262; *Peavey* v. *Calais R. R. Co.* 30 Maine, 498.

A party is not relieved from the obligation of his conduct either by inevitable accident, by the act of the law, or by the action of third parties. *Paradine* v. *Jane,* Aleyn, 26;

*Atkinson* v. *Ritchie,* 10 East, 530; *Brecknock and A. C. N. Co.* v. *Pritchard,* 6 T. R. 750; *Hadley* v. *Clark,* 8 id. 259; *Shubrick* v. *Salmund,* 3 Burr. 1637; *Barret* v. *Dutton,* 4 Camp. 333; *Parker* v. *Hodgson,* 3 M. & S. 265; *Storer* v. *Gordon,* id. 308; *Bacon* v. *Cobb,* 45 Ill. 47; *Steele* v. *Buck,* 61 id. 343; *Bunn* v. *Prather,* 21 id. 217; *Kitzinger* v. *Sanborn,* 70 id. 146; *Walker* v. *Tucker,* id. 527; *Cobb* v. *Harmon,* 23 N. Y. 148; *Beebe* v. *Johnson,* 19 Wend. 500; *Tompkins* v. *Dudley,* 25 N. Y. 272; *Adams* v. *Nichols,* 19 Pick. 275.

Injunctions obtained at the suit of third persons do not suspend or extend the period of limitation.    *Wilkinson* v. *First National Fire Ins. Co.* 72 N. Y. 499; *Barker* v. *Milard,* 16 Wend. 572.

If the temporary stoppage caused by the mayor and police had been wholly unwarranted and illegal, they would, at the most, have been acts *ultra vires,* for which the city is not bound.    Dillon on Municipal Corp. secs. 772, 968, 974; *Board of Trustees* v. *Schrœder,* 58 Ill. 353; *City of Chicago* v. *McGraw,* 75 id. 566; *City of Chicago* v. *Turner,* 80 id. 419; *Western College* v. *Cleveland,* 12 Ohio St. 375; *Buttrick* v. *City of Lowell,* 1 Allen, 172; *Thayer* v. *City of Boston,* 19 Pick. 511.

The school lots are exempt from taxation, and not subject to condemnation, the right of eminent domain being limited to private property.    *City of Chicago* v. *People,* 80 Ill. 384; *St. Louis, J. and C. R. R. Co.* v. *Trustees of the Blind Institution,* 43 id. 303; Const. art. 2, sec. 13; Eminent Domain act, chap. 47, sec. 1.

By accepting the grant of the license, the company contracted not to lease its road to more than two other companies, and the city is entitled to an injunction on its cross-bill. *Seymour* v. *McDonald,* 4 Sandf. Ch. 502; *Hills* v. *Miller,* 3 Paige, 254; *Trustees* v. *Cowen,* 4 id. 510; *Clark* v. *Martin,* 49 Pa. St. 289; *Mann* v. *Stephens,* 15 Sim. 377.

Messrs. Lawrence, Campbell & Lawrence, for the appellee :

A court of equity will not lend its aid to divest an estate for the breach of a condition subsequent, or enforce a forfeiture or penalty. 4 Kent's Commentaries, 130 ; 2 Story's Eq. Jur. sec. 1319 ; *Livingston* v. *Tompkins,* 4 Johns. Ch. 431 ; 1 Washburn on Real Prop. chap. 14, sec. 21 ; *Warner* v. *Bennett,* 31 Conn. 478 ; *White* v. *Port Huron and Milwaukee R. R. Co.* 13 Mich. 360 ; *Hall* v. *Delaplaine,* 5 Wis. 215.

The non-performance of a condition precedent is excused, and a forfeiture prevented, when the non-performance is caused by the act of the grantor making the condition, or by the act of God, or by the law. *Nicoll* v. *New York and Erie R. R. Co.* 12 N. Y. 130 ; *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.* 32 Barb. 366 ; *Davis* v. *Gray,* 16 Wall. 230 ; *Hotham* v. *East India Co.* 1 T. R. 645 ; *Moakley* v. *Riggs,* 19 Johns. 71.

He who prevents a thing from being done can not avail himself of the non-performance ; and this applies as well to conditions precedent. *Fleming* v. *Gilbert,* 3 Johns. 528 ; *Mayor* v. *Butler,* 1 Barb. 337 ; *Clarke* v. *Crandall,* 27 id. 97 ; *Davis* v. *Gray,* 16 Wall. 230 ; *Jones* v. *Walker,* 13 B. Mon. 165 ; *Potter* v. *Dennison,* 5 Gilm. 590 ; *Town of Mt. Vernon* v. *Patton,* 94 Ill. 66 ; *Risinger* v. *Cheney,* 2 Gilm. 90 ; *Stewart* v. *Kiteltas,* 36 N. Y. 388 ; *Parker Co.* v. *O'Hern,* 8 Md. 197 ; *McKee* v. *Miller,* 4 Blackf. 222 ; *Borden* v. *Borden,* 5 Mass. 67 ; *Wheatley* v. *Covington,* 11 Bush, 18 ; *Rawson* v. *Clark,* 70 Ill. 656 ; *Smith* v. *Cedar Rapids,* 43 Iowa, 239 ; *Shaw* v. *Hurd,* 3 Bibb, 372.

The unauthorized acts of municipal officers are regarded as the acts of the corporation, when they are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation on the subject to which the particular act relates. *Buffalo and Hamburgh Turnpike Co.* v. *City of Buffalo,* 58 N. Y. 639 ; *Thayer* v. *City*

*of Boston,* 19 Pick. 511; *Allen* v. *City of Decatur,* 23 Ill. 334; *Wolf et al.* v. *Boettcher,* 64 id. 316.

Mr. Chas. M. Osborn, also for the appellee, filed a brief and argument, making various points, some of which are embraced in the preceding brief.

Mr. Justice Sheldon delivered the opinion of the Court:

On the 15th day of September, 1879, the city of Chicago passed an ordinance granting to the Chicago and Western Indiana Railroad Company a license to enter the city from its southern boundary, and lay the track of its road as far north as Van Buren street, giving specific permission to cross any and all intervening streets and alleys, subject to the direction of the city authorities as to the manner of construction and keeping in repair of the streets, alleys and crossings occupied. The ordinance contained this section:

"Sec. 8. The privilege and authority hereby granted are so granted upon the further express condition that the tracks authorized by this ordinance shall be laid down and constructed within one year from the passage of this ordinance, and if not so constructed and in operation, all the rights and privileges granted by this ordinance to such company shall cease, and be null and void."

On September 15, 1880, the railroad company filed its bill in this case in the Superior Court of Cook county, to enjoin the city and its officers from preventing the laying of the tracks of the complainant across Twelfth street, and other streets in the city of Chicago lying between Twelfth and Van Buren streets, and a preliminary injunction was granted on that day. The city answered, denying the rights claimed by the company, and also filed a cross-bill, claiming that by virtue of the expiration of a year from the passage of the ordinance without completing and operating the road, the company had lost all the rights granted by the ordinance

of September 15, 1879, and praying an injunction in that respect. Upon the final hearing the preliminary injunction was made perpetual, and the cross-bill of the city dismissed for want of equity. On appeal to the Appellate Court for the First District the decree was affirmed, and the city appealed to this court.

It is claimed by the city that the limitation of one year, fixed by the ordinance, for the construction of the road, was not a condition subsequent, but a conditional limitation, self operating by its terms, under which the license granted absolutely terminated, *ipso facto*, upon the happening of the event named. The condition here we regard as a condition subsequent. Where the act on which the estate depends does not necessarily precede the vesting of the estate, but may accompany or follow it, the condition is subsequent. (3 Pet. 374.) It was evidently the design of the parties here that the license should vest at once, so that the company might proceed immediately to perform the condition by laying its tracks across the streets, and the license would be liable to be defeated by failure, without excuse, to perform the condition. We need but to refer to the following authorities upon the subject: *Nicoll* v. *New York and Erie R. R. Co.* 2 Kern. 121; *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.* 32 Barb. 366; *Davis* v. *Gray,* 16 Wall. 230. These were cases of grants to a railway company, upon condition that the road should be constructed within a limited time, and the conditions were held to be conditions subsequent. In the case last cited it was said: "The rule at law is, that if a condition subsequent be possible at the time of making it, and becomes afterwards impossible to be complied with, by the act of God, or the law, or the grantor, the estate having once vested is not thereby divested, but becomes absolute." It is there said, however, that equity will not apply the principle to the extent of the last particular, to make the estate absolute. The above rule is too familiar to need the citation of any

authorities in its support.   We refer, however, to the follow-
ing:    *Hotham* v. *East India Company*, 1 Term Rep. 645;
*Moakley* v. *Riggs*, 19 Johns. 71;   *Fleming* v. *Gilbert*, 3 id.
528;   *The Mayor of New York* v. *Butler*, 1 Barb. 337;   *Jones*
v. *Walker*, 13 B. Monroe, 165;   *Potter* v. *Dennison*, 5 Gilm.
590;   *Risinger* v. *Cheney*, 2 id. 90.   In most of these cases
even the non-performance of a condition precedent was held
excused, when caused by the party imposing the condition.
In *Fleming* v. *Gilbert*, *supra*, it was said:   "It is a sound
principle that he who prevents a thing being done shall not
avail himself of the non-performance he has occasioned."

As we conceive, it is not a question of any practical im-
portance whether we call this a grant of a license with a con-
dition subsequent, or a conditional limitation, as appellant's
counsel term it, for we consider the effect of non-perform-
ance, when caused by the act of the city, would be the same
in either case.   By the admission of appellant's counsel the
principal distinction between estates upon condition subse-
quent and conditional limitations is, that in the former case
the condition becomes operative only by some affirmative act
of the grantor or his heirs in resuming the estate granted,
but that in the latter case no such act is required.

The railroad company claims that it has two distinct
excuses for the non-performance of the condition in the ordi-
nance:   First, the performance of the condition was prevented
by the act of the city;   second, the performance was also
prevented by the act of the law, through various injunctions
restraining the company from the construction of its road.

The evidence shows that before the passage of the ordi-
nance the company had acquired a portion of its right of way,
and after such passage proceeded to acquire other portions,
by purchase and condemnation, and it appears to have been
diligent in its efforts to secure its right of way, and early in
1880 had its track laid north as far as Archer avenue, where
it had a temporary passenger depot, and to and from which

trains arrived and departed daily. Before September 15, 1880, the company had a continuous line in operation as far north as Sixteenth street, a small part of the way being over a track leased from the Chicago and Alton Railroad Company, and north of Sixteenth street had purchased large amounts .of property, had erected various buildings for freight houses and other purposes, had laid down tracks from a short distance north of Sixteenth street to Twelfth street, upon which a construction engine was running, and but for opposition by the Lake Shore road at the point of crossing its line it would have been running trains regularly to Twelfth street some time prior to September 15, 1880. Commencing early in April, 1880, there were quite a number of injunctions issued in suits brought by different parties against the company, enjoining the crossing or condemning of various pieces of property along the line, which injunctions were not dissolved until some time after September 15, 1880. These injunctions form the excuse of prevention by the act of the law. As none of these injunctions were obtained by the city, we shall not consider the question of their sufficiency as an excuse under this head, as we do not find it to be necessary for our determination of this case.

As respects prevention of performance by the city, the evidence shows that there were many stoppages by the police officers of the city of the crossing by the company of various streets from Thirty-fifth street north, occasioning in all a considerable delay of the work. The justification offered for these stoppages is, they were on the account of a permit not having been obtained from the department of public works for the proposed crossing, and notification given, so that there might be an officer present for the supervision of the work. The evidence is not satisfying that this was the real cause, but it tends to show that the action was rather under what has somewhat the appearance of a systematic policy on the part of city officials to obstruct the progress of the work.

On the 23d of March, 1880, there was rendered in the Appellate Court for the First District, a decision in what is known as the *Hickey case,* pronouncing the ordinance in question void.    The president of the railway company testifies, that "after the decision of the Appellate Court in the *Hickey case* I had several interviews with the mayor, who said that he must regard that decision as the law, and forbid our laying tracks until the decision was passed upon by a higher court; he should stop us if we undertook to cross any streets." The mayor in his testimony somewhat qualifies the above, but he does say: "In all my conversations with Mr. Brown, the president of the company, (probably I had half a dozen after the decision of the Appellate Court holding the ordinance void,) I told him I would not object to his crossing any streets in his line, provided individual property owners offered no objection,—that I would consider the ordinance as a law to me, but when property owners objected I would have to listen to them, and on that I forbade their crossing Fourteenth street." This does not vary the prohibition substantially from that as testified to by the president of the company,— whenever a street was to be crossed there would be objection, of course, by property holders, as there ever had been.

After the interview with the mayor, the company gave orders to its superintendent of construction not to lay any more tracks, and none were attempted to be laid until July 16, 1880.    On that day the company recommenced the laying of their tracks, and laid them, in fact, across Fourteenth street. As soon as this came to the knowledge of the city authorities, the superintendent of streets, acting under orders from the mayor, as he stated, proceeded to Fourteenth street with a body of police, and caused them to tear up the rails already down, and remove them, together with the ties, off the street. The company then suspended further action until September 4, 1880, when this court rendered a decision in the *Dunbar case,* overruling the decision of the Appellate Court in the

*Hickey case,* and holding the ordinance valid. The company then proceeded with the construction of its road, and without opposition, so far as concerned the streets south of Twelfth street. The tracks across Twelfth, Taylor, Polk and Harrison streets remained to be laid, and by the 15th of September, 1880, the company had made its preparations for laying such tracks, and had bought the adjacent lots upon each street at the place of the proposed crossings. On the morning of September 15, 1880, the company applied to the Superior Court for an injunction against the city and its officers, to restrain them from interference with the railroad company in the laying of its tracks across the above named streets. This bill was the original bill in the present case. The injunction was awarded, and duly served, and after such service the company commenced the laying of its tracks across each of said streets at the same time. But before the day was over, the superintendent of streets, heading a force of police, appeared at each of the street crossings, tore up the rails and ties which had been laid entirely across Twelfth and Polk streets, and partially across Taylor and Harrison streets, and the ties were piled together on vacant lots near the respective crossings, and the mob which had gathered set them on fire, and laid the rails across the burning ties. The next day an attachment was issued against the city officers for contempt of the injunction, and the superintendent of streets was found guilty of contempt, and punished. Soon after the termination of the contempt proceedings, the rails were relaid across these streets, where they have since remained.

As against the claim of the city to have forfeited the right given by the ordinance to construct the road across streets, because of non-compliance with the condition that the road should be completed within one year, is the railroad company entitled to say that it was prevented from such compliance by the act of the city? We think it is. It is true that this

act of prevention of September 15, of itself, was not the cause of the non-completion of the road within the year, as it would not have been completed within that time if there had not been this act of interference. It was intended to lay the tracks on that day only across the streets, and not through the intervening blocks; and, indeed, this latter could not have been done, as the entire right of way between Twelfth and Van Buren streets had not been obtained,—and this is made a point against the company, that it had not acquired the right of way, and from that cause was unable to complete the road within the time limited. But we think the company is entitled to say that it was prevented from the construction of its road for a period of at least five months, dating back to the time of the mayor's forbidding any further laying of the tracks. During such time of prevention it could not be expected the company would incur the expenditure of large sums of money in acquiring the right of way, so long as there was this uncertainty whether it would be permitted by the city to cross the streets. Had there not been such obstruction by the city, the company might have acquired the entire right of way previous to September 15, and it may well say that it would have done so, and the city should not be admitted to gainsay it. There should be all reasonable construction against the city, in order that it may not have a chance of advantage from its own wrong.

As to how much of prevention of performance there was, the executive head of the city government, under a decision of court that the ordinance was void, had, some five months before the expiration of the year, forbidden the further construction of the road across any streets. In the two instances of attempt to lay the tracks afterwards, there was actual prevention by force. The occurrences of July 16, at Fourteenth street, and of September 15, at the streets north of Twelfth, demonstrate what was the meaning of the interdict of the mayor, and what potency it had. They show that it was

tantamount to prevention by physical force, and that the company had the right to so take it, and to yield to it as such. Even an injunction of court was powerless to withstand the carrying of it into effect. In these two instances of attempts to lay the tracks in the face of the mayor's prohibition, there was actual prevention by force. It is a fair conclusion that the same result would have attended such an attempt on any other day whilst this prohibition hung over the railroad company. After September 4 (the time this court decided the ordinance to be valid) the prohibition was relaxed so far as to permit the laying of tracks south of Twelfth street, but north of Twelfth street the prohibition continued in force, as shown by the events of September 15.

It is objected that there had been no location of the line of the road north of Twelfth street. It was certainly located across the streets when the tracks across them were laid down. There does not appear to have been any resolution of the board of directors making a location of the line, but it appears that in July, 1879, the directors, acting among themselves, individually, selected this route, and marked it upon a map; that the map was taken to New York, and there exhibited, and with the line thus designated a loan was negotiated, and upon the president's return he reported to the board of directors that he had in New York submitted the plan of the company to further extend its line into the city, and to acquire the necessary ground for the erection of a union passenger depot on Van Buren street, etc., and that he had effected the loan, and thereupon a resolution was passed approving the negotiations as thus reported. But whether a location or not, there was no provision in the condition for the location of the road specifically. The location was a matter pertaining to the construction of the road, and if there was excuse for the non-construction of the road within the year, there would likewise be such for not having located it. Had there been no prevention by the city, as before said, the

road might have been located and constructed within the year, and the company may well say, against the city, it would have been.

The further ground is taken by appellant, that although the completion of the railroad within a year was prevented by the city officers, yet in so doing they were acting without any authority of the common council of the city, and their action therefore is not binding upon the city as its act. We recognize the doctrine to be, that the unauthorized acts of municipal officers are regarded as the acts of the corporation, provided the acts are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation upon the subject to which the particular act relates. (*Thayer* v. *City of Boston*, 19 Pick. 511; *Buffalo and Hamburgh Turnpike Co.* v. *City of Buffalo*, 58 N. Y. 639; *Chicago* v. *McGraw*, 75 Ill. 570; Dillon on Municipal Corp. sec. 764.) In the present case, the mayor, the superintendent of streets, and the superintendent of police, were engaged in doing the acts which prevented the railroad company from constructing its road. The mayor is the general executive officer of the city. He, and other officers under his control, are the executive department; and we can not doubt that the city should here be held liable for these wrongful acts done by the officers of the executive department, within the sphere of their authority, though not authorized by the common council to do them, as being its (the city's) own acts.

There is one objection taken by appellant's counsel which we think is founded upon a misconstruction of the decree. It is said the decree enjoins the city from interfering with the construction and operation of appellee's road upon its route as located,—that the location claimed is directly through and across the lots owned and used by the city for public school purposes, lying immediately north of Twelfth street, and extending from Third to Fourth avenue. It is said that under the decree, as it stands, the railway company may

construct its tracks through this school property, and the city will be powerless to interfere, even though the company shall not have acquired title to the land, by purchase or condemnation. The preliminary injunction is confined solely to streets, except the concluding words, as follows : "or from interfering with the Chicago and Western Indiana Railroad Company in the operation of its railroad;" and the final decree, after making the preliminary injunction perpetual, reiterates the injunction confining it entirely to streets, except in these concluding words: "and from interfering with the company in the operation of its road under such ordinance." This surely can not be construed to prevent the exercise of any legal remedies at the instance of the city, or to give to the company the right to enter upon and lay its tracks across these school lots without having first acquired the property, by purchase or otherwise. No tracks have been laid down north of Twelfth street, except across streets.

In connection with this school property, another point in respect of location of route is made. It is said that the location of the route of the road was an essential condition precedent to the construction of the track; that if the location of the line has been made across this school property, the property can not be condemned, being public, and not private, property, and it does not appear that the right of way across it can be acquired by purchase; that this being true, the track can not be constructed across the property, and the location, therefore, claimed by the company, is an impracticable one. There is no evidence tending to show that this property may not be acquired by purchase, and it is not to be assumed that it can not be. There is nothing, then, to show that the location of the route through this school property, as a continuous line of railroad from Twelfth street to Van Buren street, is an impossible or impracticable one.

It is objected that as regards blocks 32 and 33, lying just north of Sixteenth and east of Clark streets, over which

appellee has laid its tracks, it has never yet acquired title; that its only interest in those premises is under an agreement, of August 25, 1880, with the Chicago and Northwestern Railroad Company and the Chicago, Burlington and Quincy Railroad Company, each owning an undivided one-sixth of the premises, the remaining four-sixths belonging to the Lake Shore and Michigan Southern Railroad Company; that the true construction of section 8 of the ordinance requiring the completion of the road within one year, is, that it shall be legally completed by properly acquiring title to the premises crossed. We do not so construe it that it is essential to acquire full title to premises crossed. It is enough, we consider, that the road is lawfully constructed and in operation over the premises.

It is also an object of the city's cross-bill to enjoin the railroad company from leasing to or permitting the use of its tracks within the city by any other railroad companies, exceeding two in number. The right to this relief is predicated upon that portion of section 7 of the ordinance which reads as follows: "That the privileges authorized herein are granted upon the express condition that the Chicago and Western Indiana Railroad Company shall permit any other railroad company, not exceeding two in number, which have not at present any right of entrance into the city of Chicago under any existing ordinance, to use the said main railroad tracks herein authorized to be laid, jointly with the said Chicago and Western Indiana Railroad Company, upon such fair and equitable terms as may be agreed upon by said companies." It is contended that the true construction of this provision is, that it is a limitation or restriction upon the right of the company to lease the use of its lines within the city to more than two other companies,—that while, by the general Railroad act, the company might lease its lines regardless of any such limitation, by accepting the grant, coupled with this limitation, it contracts with the city that

it will not lease its lines to more than two other companies. The object of this provision manifestly was, to provide for additional railroad facilities to the city of Chicago or the public, and to require the company to admit at least two companies upon the same right of way. It was an agreement on the part of the company that it should lease to other companies the right of user, the obligation, however, not to extend to more than two companies. The provision was a limitation, not upon the right of the company to admit other companies to a joint use of its tracks, but upon the exclusive enjoyment of the estate granted by the city. This was the view taken of that provision in *Chicago and Western Indiana R. R. Co.* v. *Dunbar*, 100 Ill. 137.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*