In the Matter of the Arbitration between PALMER PLASTICS, INC., Petitioner, and DAVID H. RUBIN, Respondent.

Supreme Court, Special Term, Kings County, October 25, 1951.

*Herman Feder* for petitioner.

*Harry Goodman* for respondent.

*Jacob I. Smith,* as arbitrator.

DI GIOVANNA, J. Motion for an order removing and disqualifying an arbitrator named in a contract between the parties and for a direction that the arbitration proceed before the American Arbitration Association.

There are two agreements between the parties, one dated January 4, 1949, providing for the sale of respondent's share of stock to the petitioner, with various executory provisions

respecting payment of the price, collateral, security, liquidation of certain assets and other matters. A second agreement, dated January 7, 1949, is a license agreement between the respondent, as licensor, and petitioner, as licensee, under which petitioner was given an exclusive license for the manufacture and sale of a toy, and pursuant to which petitioner obligated itself to render monthly statements of sales, allowances and returns in connection with said items, and to make monthly payments of one half of its net profits with respect thereto, as defined in said agreement.

Paragraph " 13 " of the second agreement provides: " In the event that said Jacob I. Smith shall refuse to qualify as arbitrator or in the event of his death, insanity, resignation or removal, arbitration hereunder shall be conducted in accordance with the rules of the American Arbitration Association before a single arbitrator designated in accordance with said rules and said arbitrator so appointed shall have the same rights and powers hereunder as said Jacob I. Smith, including any and all rights and powers not pertaining to the office of arbitrator as well as those pertaining to the office of arbitrator."

The arbitrator named in the agreement had been the attorney for the president of the petitioner, personally for the petitioner, and for the respondent individually, at the time of the execution of the agreement and for many years prior thereto. The parties named him because of that association. In the latter part of 1949 when the agreement was about to expire, the respondent raised questions concerning the net profits as defined in the agreement. It was therefore considered that those questions would have to be determined in arbitration under the provisions of the agreement by Mr. Smith. At that time Mr. Smith still represented the petitioner and the respondent. For some reasons, the matter was not called for arbitration until August, 1951. It appears from the moving papers that between that time and the time of the commencement of the arbitration Mr. Smith had ceased being the attorney for the petitioner and its president. Various requests were made of Mr. Smith to disqualify himself from acting as arbitrator because he continued to be the attorney for the respondent; his wife became financially interested in a business venture with the respondent; he engages in social contacts with the respondent; he privately interrogated a witness concerning matters involved in the arbitration without permitting the petitioner or its present attorney to be present and he attempted to settle the disputes between the parties by seeking to prevail upon the

petitioner to pay to the respondent a certain sum of money in settlement of the dispute but which the respondent refused to accept.

On August 15, 1951, the arbitration commenced at the petitioner's place of business and the attorney for the petitioner immediately noted his objection to the qualifications of the arbitrator, and took exception to the actions of the arbitrator in discussing privately with one of the witnesses matters concerning the dispute.

The petitioner, through Irving Wildstein, its president, states at page eight of his affidavit that " I was persuaded and induced by him (the arbitrator), in order to obviate all problems presented by a hearing in arbitration to offer a very substantial sum in settlement of all claims. In these talks with me, Mr. Smith was acting not only as arbitrator but as the attorney for Mr. Rubin. It was my impression that if I acceded to Mr. Smith's suggestion that the offer would be acceptable to his client and the problems entailed in an arbitration averted. To my chagrin some little time thereafter I was told by Mr. Smith that he had been unable to convince his client to accept the offer which he had induced me to make."

Petitioner now claims that these circumstances make it impossible for the arbitrator to sit impartially.

The arbitrator himself in an affidavit submitted in connection with this application states at page 3 of his affidavit: " I originally consented to act as arbitrator with hesitancy and misgivings, which I expressed to both parties at the time."

And at page 4: " When the agreements of January 4, 1949 and January 7, 1949, were entered into both parties anticipated that similar questions and disputes might arise thereunder and both parties insisted that I consent to act as arbitrator and that if I did not consent to act as arbitrator they would not enter into the agreements. The alternative would have been forced liquidation of the petitioner and its subsidiaries with great loss to all concerned and possibly bitter litigation. It was against this background and at the earnest insistence of both parties, that I consented to act as arbitrator."

And at page 8: " In October or November, 1950, Mr. Wildstein on behalf of petitioner asked me to disqualify myself as arbitrator on the ground that I was no longer the attorney for the petitioner, although still the attorney for respondent in other matters, and on the further ground that I was more friendly with respondent than with him. I told Mr. Wildstein that regardless of the validity or invalidity of the reasons I

would be very happy to withdraw from the matter if I secured respondent's consent; that I would talk to the respondent about the matter and report back to him. I talked to the respondent about my withdrawing. Respondent took the position that it was my duty to continue as both parties had entered into the agreement in reliance on my acting as arbitrator. I reported this back to Mr. Wildstein and told him that I felt and agreed with respondent that it was my duty to continue to act, but that I would prefer to see the matter settled. My personal relations with Mr. Wildstein then were, and I believe, still are, friendly. At my urging he made an offer of settlement which he stated he made most reluctantly (and I believe he did so very reluctantly) in order to have the matter disposed of without further proceedings. * * * I was unable to secure respondent's acceptance of the offer and so advised Mr. Wildstein.''

And at page 9: '' I told him that I was disappointed and unhappy at having to act as arbitrator rather than as conciliator.''

At page 10: '' I told him that my position as arbitrator was still as onerous as it had been when I last spoke to him in February but that I still felt that I had assumed an obligation which I had a duty to discharge and that I did not desire him to move for my disqualification.''

It was agreed after hearings that further hearings would be suspended pending this application to the court for a ruling on the motion to remove Mr. Smith as arbitrator.

The respondent in his affidavit insists upon adherence to the contract and retention of Mr. Smith as arbitrator.

It can thus be seen that a question is presented here as to whether this court is empowered to remove an arbitrator named in contract of arbitration as one disqualified to act as arbitrator, before the arbitration proceedings have proceeded to an award. Neither brief submitted by counsel brings to the attention of the court cases involving removal of arbitrators other than after the award has been made and motion made to affirm or disallow the award. Without citing cases, the power of the court is well known to permit it to remove an arbitrator who has placed himself in a position where it appears from the award and from the proceedings that he could not have acted impartially even though he be thoroughly honest.

It is well settled that where parties make a contract they are bound by the terms of it. As is expressed in Wait's New York Practice (Vol. I, p. 251): '' Any person is at liberty to

select whom he likes as his judge, but once having made such selection he should in morals and good faith be estopped from questioning the competency of the judge of his own choosing. The rule applicable to judges and rendering them improper persons to act under certain circumstances should govern arbitrators and umpires selected to determine a controversy. We have been unable to find any authorities on this proposition in this State with the exception of Mayor, etc. v. Butler, 1 Barb. 325. Other States furnish authorities holding that bias, formation of opinion in advance, relationship to one party to the submission render the arbitrator incompetent to act and disqualifies him as an arbitrator. Hunting v. Rawling, 8 Dowling, 879; Brown v. Leavitt, 26 Me. 251; Fox v. Hazleton, 10 Pick. 275.''

In the case of *Mayor of City of New York* v. *Butler* (1 Barb. 325, 336–337) the court stated: '' An appointment originally good, may become void by subsequent events. Had one of the arbitrators, after the selection, and before making the award, become deranged, or interested in the subject matters of the claim, either event would have rendered him incompetent, and virtually annulled this appointment. * * * In this case the appraisers were doubtless impartial when originally appointed. But they had subsequently formed an opinion, and expressed it in a solemn manner. They would naturally strongly incline to such opinion on any future investigation. They could not be the impartial men to which both parties are entitled. As jurors, they would certainly have been disqualified. The same rule should apply to arbitrators; more especially as their award is of more binding effect than the verdict of a jury. The plaintiff was, therefore, under the circumstances, justified in considering the first selection as virtually annulled, and in calling for a new appointment; and the defendants should have yielded to his request.''

It is clear that under the provisions of article 84 of the Civil Practice Act arbitration is a special proceeding and once submitted to the courts is subject to the equitable powers of this court. Contracts on arbitration whether of disputes in futuro or of existing controversies should receive a liberal construction with a view to accomplishing the purpose of the parties to effect a complete and final settlement of all existing controversies and to authorize the award made. While no power is given to the courts to change or modify existing contracts or to make new ones for the parties where the parties have stipulated for replacement of the named umpire under certain conditions, the

court may, in the event it deems such conditions to have arisen, make such substitution in accordance with the terms of the stipulation.

It is clear that an arbitrator is one to whom matters in dispute between two or more parties are submitted for final determination. While natural or legal disabilities hinder a person from being an arbitrator provided the facts be known to the parties at the time of the making of the contract, the courts will closely scrutinize an arbitrator whose relations to one party become so changed from the date of the making of the contract to the time of the hearings as to make it quite probable that his judgment will be influenced. That is so even in a case such as this where it is abundantly clear that the arbitrator is a man of complete honesty and highest integrity. However, impartiality is the one and fundamental requisite of an arbitrator. He must be free from bias and possessed of judicial impartiality so that he may render a faithful, honest and disinterested opinion. In this case this arbitrator suggested a means of settlement to the petitioner and influenced him in making an offer of money to the respondent for the purpose of settling their disputes. It is difficult for the court to understand how this arbitrator can hereafter sit in judgment upon the disputes without being influenced by the fact that petitioner did make an offer to settle the dispute and yet be in a position to render his award in favor of the petitioner if the facts so warranted. An arbitrator who was employed by one of the parties, as in this case, as attorney, and is charged with the duty of looking after that party's particular interests in making the award, and who has been employed by that party as an attorney in other proceedings and is engaged in business interests with that party's wife in other corporations, is not disinterested or impartial and is disqualified to act as an arbitrator.

If the facts herein were brought to the attention of a court after an award had been made, on application of the party against whom the award was made the court would undoubtedly set the award aside. In construing paragraph thirteen of the contract the court may well infer that the parties contemplated possible removal of Mr. Smith for reasons such as have arisen in this case before the actual commencement of the arbitration hearings because they provided in paragraph thirteen for the appointment of another arbitrator in the event of Mr. Smith's '' death, insanity, resignation or removal ''.

The court therefore feels that in the interests of justice and in order to enable the controversy herein to be settled properly and finally, it is empowered by reason of its equitable powers to remove Mr. Smith, as arbitrator, at this time and to direct the parties to proceed to arbitration before a single arbitrator to be designated in accordance with the rules of the American Arbitration Association as provided in paragraph thirteen, and in the event of the failure of the parties to agree upon an arbitrator the court will be compelled to appoint an umpire as provided in the Civil Practice Act. In this manner much useless litigation will be avoided.

The alternative suggestion is made to counsel that if the respondent desires the retention of Mr. Smith, petitioner be permitted to name an additional arbitrator on his own behalf and that both arbitrators then be permitted to choose a third as an umpire. If the parties can agree on that alternative by filing a stipulation the court on the settlement will make provision therefor.

This motion is, therefore, granted as above indicated.