THE CITY OF DETROIT v. THE DETROIT CITY RAILWAY CO.

*Renewal of Corporate Privileges—Acceptance of Charter Conditions.*

Where the rights granted by a municipality to a corporation have lapsed, the municipality can impose whatever conditions it pleases upon a renewal of them.

Where a corporation has no right to act except under the conditions of an ordinance granting permission, its action implies its acceptance of the conditions in full.

A municipal ordinance allowed a street railway company to double its track *throughout* a certain street, but stipulated that it should thereafter bear all the expense of repaving so much of the street as was occupied by its tracks, and should relay its tracks in the middle of the street. *Held* that the ordinance applied to the whole street, and that if the company availed itself of the permission in part, it accepted the conditions in full, and lost the benefit of former exemptions or privileges that were inconsistent with it.

Error to the Superior Court of Detroit. Submitted October 19. Decided November 1.

TRESPASS. The facts are in the opinion.

City Counselor *D. C. Holbrook* (on brief) for plaintiff in error. If a corporation takes the benefit of an ordinance it accepts its conditions throughout. *Charles River Bridge v. Warren Bridge,* 7 Pick., 344, 469; *Bank of United States v. Dandridge,* 12 Wheat., 70; Abbott's Digest of Corporations, pp. 146–8.

*Meddaugh & Driggs* and *Sidney D. Miller* (on brief) for defendant in error.

CAMPBELL, J. Judgment in trespass was rendered against the city of Detroit for removing the track of the defendants in error, on their refusal to do so when a portion of Jefferson Avenue was ordered to be repaved. The questions presented are whether certain parts of the tracks laid in 1869, under an agreement or ordinance of

1862 exempting defendants from expense of materials in repaving the avenue, and allowing them to maintain one of their tracks in the centre of the street and another to the north of it, are by subsequent transactions required on repaving to be placed equi-distant from the centre; and whether, by the same transactions, the expense of material for repaving the tracks, before borne by the city, is laid on the company.

The controversy arose in consequence of the repaving of Jefferson Avenue in 1876 from Shelby to Second street, where the company had laid a double track in 1869. They demanded that the city should furnish paving material. The city refused, and directed them to lay their tracks in the middle of the street, and on their neglect to do so, the city authorities removed them.

When the street railways were first contemplated, the city of Detroit, in 1862, passed an ordinance granting the defendant in error (or those to whose rights it has succeeded), exclusive rights in various streets, including Jefferson avenue, upon certain conditions and with certain privileges, the important branches of which were these: single tracks were to be laid in the centre, and double tracks parallel with and equi-distant from the centre of the streets; but where a single track was laid first and a second one afterwards, the latter might be laid on either side of the first. The privilege of building a second track might be exercised within five years after laying the first, by consent of the council. The company was to keep the tracks in good condition "provided, however, that upon the paved portions of said streets, the materials for repaving shall be supplied at the expense of the city."

The line on Jefferson avenue was built in 1863–4, when it was paved with stone.

In 1869 the city ordered the avenue between Shelby and Cass streets (two blocks) to be paved with Nicholson pavement of wood, which was completed in September, 1869. While this was contemplated and progressing, the company applied to the council for leave to lay a double track on any portion of their line at pleasure. Instead of granting

this privilege they were allowed to build a double track for between three and four blocks, from a point 50 feet west of Shelby street to 50 feet east of Second street, on condition of removing a certain switch further down, and putting the street-paving in good condition without delay.

Under this permission they relaid the track between Shelby and Cass and for two blocks westward with a double track, the second track being laid north of the old single track, the location of which was not changed, and connected by switches which had previously existed there. The spaces were paved with wood, and this double track remained unchanged until removed as complained of.

In May, 1873, as the portion of Jefferson avenue eastward from Shelby to Chene street then paved with stone was to be repaved with wood, which was done during 1873-4, the company asked of the city "permission and authority to construct a double track in the middle of said city as the work of repaving progressed."

Thereupon, in lieu of special permission, the council passed the ordinance out of which this dispute arises. It gave permission to construct a second and maintain a double track throughout the entire avenue, but subjected this permission to the following proviso:

"Provided, expressly, that if hereafter the pavement on said avenue shall be extended, or said avenue shall be ordered repaved, the said grantee or company shall, contemporaneously with such paving or repaving, at its own sole expense, excavate, grade, and pave or repave, all the portion of said avenue lying within the rails of each track, and between the tracks, and shall also keep their portion of the said track and two feet nine inches outside the outer rail of each track, in proper condition and repair, and the two inner rails shall be laid equi-distant from the centre of the street; said company shall thus pave or repave with the same material as shall be used for the paving or repaving of the balance of said avenue, or with material satisfactory to the common council, and the expense thereof shall include the cost of paving, repaving, grading, excavating, removing of earth, and all necessary work, and the whole shall be done in a manner satisfactory to the common council."

At the same time the following resolution was passed:

"Resolved that the Detroit City Railway Company are hereby granted permission and authority for the purpose of repaving within and between its tracks, where stone pavement now exists on Jefferson avenue, to use sufficient of the stone on said avenue to effect such repaving, for the first time. When the said avenue shall be repaved with wood, said company to relay Medina stone cross-walks between their tracks where cross-walks now exist."

Contemporaneously with the repavement of the avenue between Shelby and Chene streets the company laid a double track for that distance on either side of the middle of the avenue, using the stone between their tracks as authorized by said ordinance and resolution.

No written acceptance of the ordinance was ever made. Before the passage of that ordinance a portion of the avenue east of Chene street was paved with wood, and the railway had been made with a single track and switches over the whole distance from Shelby street to the eastern limits of the city, and it so continues still east of Chene street.

In May, 1876, the council ordered the avenue between Shelby and Second streets to be repaved with wood. The company asked the city to furnish materials for repaving as before mentioned, which was refused, and on the neglect of the company to remove their tracks to the centre of the street, they were removed by the Board of Public Works.

The court below found that the course of the company in laying their double track from Shelby to Chene streets in the manner described, amounted to an acceptance of the ordinance of 1873, but that the acceptance was subject, as to the part below Shelby street, to the original arrangement of 1862.

As the right to build a double track had become lost entirely by lapse of time, the council had a right in granting new permission to do so on any conditions they saw fit to exact. The ordinance which they passed was explicit, and the company, having no right to build a double track without it, must be regarded as having accepted it by acting on it.

They could not accept it in part and reject it in part, without a new permission of the council, which was not asked or given. The only real question, therefore, is whether the ordinance was local or general.

We think it will not bear a restricted construction without perverting its language. It authorizes a double track to be constructed and maintained throughout Jefferson avenue, and not on any particular part of it. This alone would not necessarily interfere with a double track already built without the other provisions. But the condition applies not only to existing pavements but to pavements extended, and not then existing. The condition requiring the company to repave at their own expense applies expressly whenever the avenue is ordered to be repaved, and has no exception.

This ordinance is evidently designed to cover the whole ground uniformly, and to provide for both cases referred to in the original ordinance of 1862. There was no occasion for re-enacting the clause fixing the location of double tracks, if the line below Shelby street was to remain unaffected, and if the single track above Chene street was to be left in the same way. The language would naturally have confined its operation between Shelby and Chene streets, if this had been designed. And it is to be observed that the conditions concerning the location of double tracks are not directed towards future tracks only, but to all tracks. The expense of paving, if no new ordinance had been passed, would have been thrown on the city above as well as below Shelby street; and the language of the new ordinance is not consistent with any limited application of the change. If limited, we have no means of knowing what the limits were designed to be. And there are no equitable reasons for preferring one part of the street to another, either for immunity from paving expenses, or for allowing different rules for the use of the road bed. All considerations of justice and equality would suggest the propriety of uniform regulations.

As these rules were only applicable when paving was to be made or renewed, there would be no special hardship in

requiring tracks to be moved one way or the other at such a time; but this would make no difference in the interpretation inasmuch as the company could accept or reject the privileges to which the conditions were attached.

No reason has been suggested, and we cannot conceive of any, which would authorize us to give any unnatural meaning to these conditions. And we think the construction put on them by the city was the correct and natural one, and such as would occur to any one from the reading alone.

The city authorities were therefore in our opinion justified in their action. The judgment below must be reversed and judgment entered for defendant below, the plaintiff in error, with costs of both courts.

COOLEY, C. J., and GRAVES, J., concurred.

MARSTON, J., did not sit in this case.