# CHESAPEAKE & OHIO RAILWAY COMPANY *v.* MILLER, Auditor.

## IN ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

Argued March 18, 19, 1885.—Decided April 6, 1885.

The provision in the act of the Legislature of West Virginia incorporating the Covington & Ohio Railroad Company that "no taxation upon the property of the said company shall be imposed by the State until the profits of said Company shall amount to ten per cent. on the capital" was personal to that company and did not inhere in the property so as to pass by a transfer of it.

Immunity from taxation conferred on a corporation by legislation is not a franchise. *Morgan* v. *Louisiana,* 93 U. S. 217, quoted and affirmed.

A statute of West Virginia regulated sales under foreclosure of mortgages by railroad companies, and provided that "such sale and conveyance shall pass to the purchaser at the sale, not only the works and property of the company, as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time and before the sale, have constructed;" and that "upon such conveyance to the purchaser, the said company shall *ipso facto* be dissolved;" and further, that "said purchaser shall forthwith be a corporation" and "shall succeed to all such franchises, rights and privileges ; . . . as would have been had . . . by the first company but for such sale and conveyance:" *Held,* (1) That purchasers thus becoming a corporation derived the corporate existence and powers of the corporation from this act, and were subject to general laws as to corporations then in force ; (2) That an immunity from taxation enjoyed by the former corporation was not embraced in the words of description in the act, and did not pass to the new corporation.

This suit was begun by a bill in equity in a court of the State of West Virginia against the auditor of that State to restrain the collection of a tax, alleged to be illegal, on the ground that the plaintiff in error enjoyed an immunity from taxation. Being decided against the claim of exemption, the cause was brought here by writ of error. The grounds of the claim and the other facts which make the federal question are stated in the opinion of the court.

*Mr. W. G. Robertson* and *Mr. George F. Edmunds* for plaintiff in error.

*Mr. Cornelius C. Watts,* Attorney-General of West Virginia, for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This writ of error brings into review a final decree of the Supreme Court of Appeals of the State of West Virginia dismissing the bill of complaint filed by the plaintiff in error, the error assigned being that that court gave effect to a statute of the State alleged to be void, on the ground that it impaired the obligation of a contract between the plaintiff in error and the State of West Virginia.

The statute thus drawn in question is an act of the Legislature of West Virginia, passed March 7, 1879, subjecting the property of the plaintiff in error in that State to taxation.

The contract alleged to be thus broken by the State is one of exemption from taxation, contained in the seventh section of an act of the Legislature of West Virginia, passed March 1, 1866, entitled " An Act to incorporate the Covington and Ohio Railroad Company," and is in the following words: .

" 7. The rate of charge by said company for passengers and freight transported on the main line and branches of said railroad shall never exceed the highest allowed by law to other railroads in the State, and no discrimination shall be made in such charges against any connecting railroad or canal company chartered by the State, and no taxation upon the property of the said company shall be imposed by the State until the profits

of said company shall amount to ten per cent. on the capital of the company."

The plaintiff in error, complainant below, alleging that it was entitled to the benefit of this exemption by way of contract with the State, and that no profits had been made by it upon its capital, prayed for an injunction·to restrain the appellee, the auditor of West Virginia, from proceeding under the act of March 7, 1879, to assess and collect any tax upon its property within the State.

The plaintiff in error became a party to the contract contained in the act of March 1, 1866, to incorporate the Covington and Ohio Railroad Company, in the following manner. This act was similar in its terms to one passed about the same date by the General Assembly of the State of Virginia. Both had in view the completion of a railroad from Covington, in Virginia, to some point on the Ohio River, the construction of which had been undertaken by the State of Virginia as a public work by its own means, but which was suspended, after an expenditure of several millions of dollars, in consequence of the breaking out of the civil war in 1861. A portion of it was within the territory that became West Virginia, and thenceforward that part of the work fell within the jurisdiction and ownership of the new State. To provide for its completion was the object of the act of March 1, 1866, to incorporate the Covington and Ohio Railroad Company. That act did not, by its terms, create a corporation, but authorized a future organization under it. It ceded to the company, when constituted and certified as thereinafter provided, " all the rights, interest and privileges of whatsoever kind, in and to the Covington and Ohio Railroad and appurtenances thereunto· belonging, now the property of the State of West Virginia, upon condition that it shall within six months after its incorporation, as provided in the tenth section of the act, commence, and within six years complete, equip and operate a railroad," &c., as therein described ; and a failure to comply with this condition operated to forfeit the title to the road, which should then revert to the State.

The act also appointed commissioners on the part of the

State to act in conjunction with others appointed by the State of Virginia, whose duty it was to offer the benefits of the charter " for the acceptance of capitalists, so as to secure the speediest and best construction, equipment and operation of said railroad." "To this end," it added, " they are empowered to make a contract with any parties who shall give the best terms and the most satisfactory assurances of capacity and responsibility, and to introduce into said contract any additional stipulations for the benefit of the State and in furtherance of the purposes herein declared and not inconsistent with this act, which contract shall be, to all intents and purposes, as much a part of this charter as if the same had been herein included at the time of the passage of this act." The certificate of these commissioners of the due execution of such a contract, and the organization of the company, should operate to confer upon said company all the benefits of this charter, subject only to the provisions of the Code of Virginia for the government of internal improvement companies, so far as not inconsistent with that act.

On February 26, 1867, the Legislature of West Virginia passed an act to provide for the completion of a line or lines of railroad from the waters of the Chesapeake to the Ohio River, which authorized the consolidation of the Covington and Ohio Railroad Company, when organized under the act of March 1, 1866, with one or more of several other railroad companies, including the West Virginia Central Railway Company; the consolidated company to be known as the Chesapeake and Ohio Railroad Company, and to be vested with " all the rights, privileges, franchises and property which may have been vested in either company prior to the act of consolidation." It was also thereby provided that the Virginia Central Railroad Company and the West Virginia Central Railway Company, or either of them, "may contract with the Covington and Ohio Railroad Commissioners for the construction of the railroad from Covington to the Ohio River, and in the event such contract be made, the said Virginia Central Railroad Company, or the West Virginia Central Railway Company, shall be known as the Chesapeake and Ohio Railroad Company, and shall be

entitled to all the benefits of the charter of the Covington and Ohio Railroad, and to all the rights, interests and privileges which by this act are conferred upon the Chesapeake and Ohio Railroad Company when organized."

Accordingly, on August 31, 1868, the Commissioners of Virginia and of West Virginia entered into a contract with the Virginia Central Railroad Company by which the Chesapeake and Ohio Railroad Company was formed and under which it was organized, and the same was approved, ratified and confirmed by an act of the Legislature of West Virginia, "confirming and amending the charter of the Chesapeake and Ohio Railroad Company, passed January 26, 1870." Among other things, it was therein provided that the company might borrow such sums of money, at a rate of interest not exceeding eight per cent. per annum, as might be necessary in addition to the funds arising from stock subscriptions for the completion of the road, and should have power to execute a lien on its property and resources to secure the payment of the principal and interest of such loans; and the Chesapeake and Ohio Railroad Company was thereby declared to be entitled to all the benefits of the charter of the Covington and Ohio Railroad, and to all the rights, interests, benefits and privileges, and be subject to all the duties and responsibilities provided and declared in the said contract and in the statutes therein referred to.

In pursuance of these powers, the Chesapeake and Ohio Railroad Company completed the contemplated line of railroad and put the same in operation, not, indeed, strictly within the time limited in the charter, but the forfeiture thereby incurred was released by an act of the Legislature of West Virginia passed February 20, 1877.

In the meantime, to raise the funds necessary to complete the construction and equipment of the road, a large amount of bonds had been issued by the company, secured by several deeds of trust, the particulars of which are fully set out in the bill; and default in the payment of interest having occurred, due proceedings for the foreclosure and sale of the property embraced in the deeds of trust were prosecuted to final decrees

in the courts of Virginia and West Virginia; so that, in the latter, all of the railroad and other property situate in that State were brought to sale under a decree of the Circuit Court for the County of Kanawha, in West Virginia, rendered on December 18, 1877, and were sold and conveyed to the purchasers, who, in pursuance of the statute then in force applicable thereto, became a corporation under the name of the Chesapeake and Ohio Railway Company, the plaintiff in error in these proceedings.

The statute under which these proceedings took place was an act of the Legislature of West Virginia passed February 18, 1871, relating to sales made under deeds of trust or mortgages by railroads or other internal improvement companies in that State, as amended by an act passed February 20, 1877, extending its provisions to judicial sales.

It was provided by these acts that " if a sale be made under a deed of trust or mortgage executed by a railroad or other internal improvement company in this State, on all its works and property, and there be a conveyance pursuant thereto, such sale and conveyance shall pass to the purchaser at the sale, not only the works and property of the company, as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time and before the sale, have constructed, and all other property of which it may be possessed at the time of the sale, other than debts due to it. Upon such conveyance to the purchaser, the said company shall *ipso facto* be dissolved. And the said purchaser shall forthwith be a corporation by any name which may be set forth in said conveyance, or in any writing signed by him or them, and recorded in the recorder's office of any county wherein the property so sold, or any part thereof, is situated, or where said conveyance is recorded.

" 2. The corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights and privileges and perform all such duties as would have been had, or should have been performed by the first company, but for such sale and conveyance; save only that the corporation so created shall not be entitled to debts due to the first company,

and shall not be liable for any debts of, or claims against, the said first company, which may not be expressly assumed in the contract of purchase; and that the whole profits of the business done by such corporation shall belong to the said purchaser and his assigns. His interest in the corporation shall be personal estate, and he, or his assigns, may create so many shares of stock therein as he or they may think proper, not exceeding, together, the amount of stock in the first company at the time of the sale, and assign the same in a book kept for that purpose. The said shares shall thereupon be on the footing of shares in joint stock companies generally, except only that the first meeting of the stockholders shall be held on such day and at such place as shall be fixed by the said purchaser, of which notice shall be published for four successive weeks in a newspaper printed in each county in the State wherein said corporation may do business."

These provisions are copied from the Code of Virginia of 1860, ch. 61, §§ 28, 29 and 31. This circumstance is material to the case, as urged by the plaintiff in error, in view of the provision of the first section of the act of the Legislature of West Virginia of March 1, 1866, to incorporate the Covington and Ohio Railroad Company, which provided for its future organization as a corporation, "according to the provisions of the Code of Virginia, second edition, for the government of incorporated companies." It remains to be added that the Legislature of West Virginia passed an act on January 31, 1879, to amend section 7 of the act to incorporate the Covington and Ohio Railroad Company, so as to omit from it altogether the clause containing the exemption from taxation. Chap. 5 West Va. Acts, 1879.

That the Chesapeake and Ohio Railroad Company, by virtue of its organization as a corporation under the act of March 1, 1866, became entitled to the exemption from taxation secured by § 7 of that act, and that as a matter of contract, is not denied or disputed. Whether the Chesapeake and Ohio Railway Company succeeded to that right and immunity, is the question to be determined.

It is quite clear that, as a contract originally entered into

between the State of West Virginia and the stockholders who organized the Chesapeake and Ohio Railroad Company, under the act of March 1, 1866, it was personal to that corporation, and intended to benefit those who should be induced to subscribe to its stock. Every circumstance that is referred to for the purpose of proving its nature as a contract, such as, that the State had already sunk a large amount of money in an incomplete and therefore unprofitable public work, that it was very desirous to induce private capitalists to finish its construction, and to that end was willing to cede to them the property itself, and the franchises of a railroad connected with it, and by way of further inducement, to exonerate the property in their hands from all burdens of taxation until the investment yielded a profit equal to ten per cent. upon the capital invested, also prove that the only persons in contemplation as beneficiaries of these privileges and immunities were those who were willing to risk their money in an enterprise the future success of which could only be regarded as doubtful. The contract was not for the benefit of those who should become creditors of the company, further than the fact that the property of the company was itself exempted from the charge of taxation would enhance its credit by securing to mortgage bondholders a lien which could not be subordinated by the State. It was not made with the creditors of the company, nor was it conferred as a franchise inhering in the property itself, so as to pass by way of incumbrance or assignment to mortgagees or purchasers. The language of the clause which contains the exemption is explicit. It is, that "no taxation upon the property of the said company shall be imposed by the State until the profits of the said company shall amount to ten per cent. on the capital of the company." But one company is spoken of, and that is the company to be incorporated under the act. The property to be exempt is the property of that company and of no other, and while it continues to be the property of that company and no longer. And the exemption is to cease when the profits of that particular company have reached the limit designated, and that limit is measured by a ratable proportion fixed with reference to the capital to be

subscribed to form that company and no other. And there are no words of assignability attached, either expressly or by any implication, to this immunity. The reasons for considering such an exemption to be a privilege pertaining to the corporation, and not inhering in the property, and passing to an assignee, were fully stated by Mr. Justice Field in delivering the opinion of the court in the case of *Morgan* v. *Louisiana*, 93 U. S. 217, and have been uniformly applied to similar cases subsequently. *Wilson* v. *Gaines*, 103 U. S. 417; *Louisville & Nashville Railroad Co.* v. *Palmes*, 109 U. S. 244; *Memphis & Little Rock Railroad Co.* v. *Railroad Commissioners*, 112 U. S. 609; *St. Louis, Iron Mountain & Southern Railway Co.* v. *Railroad Commissioners*, 113 U. S. 465. And the circumstances of the case distinguish it from that of *Humphrey* v. *Pegues*, 16 Wall. 244.

There is no claim made that the exemption passed to the trustees in the trust deeds or mortgages given to secure the payment of the bonds of the company ; and none can be made, that it passed to the purchasers by the judicial sale made under the decree for foreclosure and sale, by force of the statute declaring what such a sale should pass. The language of the act upon this subject is, that "such sale and conveyance shall pass to the purchaser at the sale, not only the works and property of the company, as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time and before the sale, have constructed and all other property of which it may be possessed at the time of the sale, other than debts due to it." So far, nothing is said of what rights, privileges, franchises, and immunities shall vest in the purchaser in respect to the property, the title to which is thus conveyed. The act, however, proceeds to say, that, "upon such conveyance to the purchaser, the said company shall *ipso facto* be dissolved." From this, it necessarily follows that all privileges, which by the terms of its charter were personal to it, ceased with its dissolution. But the statute adds: "And the said purchaser shall forthwith be a corporation by any name which may be set forth in said conveyance, or in any writing signed by him or them and recorded in the re-

corder's office of any county wherein the property, so sold. or any part thereof, is situated, or where said conveyance is· recorded." Thus is formed. a new corporate body, succeeding to the title of the property sold and conveyed to it, but deriving its existence from this law and not from the original act of incorporation, which constituted the charter of its predecessor, and with such powers, rights, privileges, franchises and immunities only as are conferred upon it by the law which has brought it into being.

These are defined in the next succeeding section. So far as material to the question its language is: " The corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights and privileges, and perform all such duties as would have been had, or should have been performed, by the first company, but for such sale and conveyance," &c.

It is earnestly contended, on behalf of the plaintiff in error, that by virtue of this language, it is entitled to enjoy the prop· erty formerly belonging to the Chesapeake and Ohio Railroad .Company, its predecessor, precisely as though it had been incorporated under the charter of that company, and therefore with the exemption from taxation which was conceded to that company. But broad, general and .comprehensive as the language is, we cannot, in reference to the subject-matter now in hand, apply it with that force and meaning. The words used are, it will be observed, "franchises, rights and privileges, . . . as would have been had, . . . by the first company, but for such sale," &c. There is no express reference to a grant of any exemption or immunity; nothing is said in relation to the subject of taxation. The words actually used do not necessarily embrace a grant of such an exemption. As was said, on this point, in *Morgan* v. *Louisiana*, 93 U. S. 217, 223: " Much confusion of thought has arisen in this case and in similar cases from attaching a vague and undefined meaning to the term 'franchises.' It is often used as synonymous with rights, privileges, and immunities, though of a personal and temporary .character; so that, if any one of these exists, it is loosely termed a ' franchise,' and is supposed to pass upon a

transfer of the franchises of the company. ' But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company ; the latter is personal and incapable of transfer, without express statutory direction."

Here, there is no such express statutory direction. Nor is there an equivalent implication by necessary construction. There is nothing in the language itself, nor the context, nor the subject-matter of the legislation, nor the situation and relation of the parties to be affected, which indicates that a grant of an exemption from taxation to a particular railroad corporation, or to a class of such, was in the contemplation of the Legislature. The subject matter of this legislation was not the original construction of railroads, but the operation of railroads already constructed. The State was not in the attitude of a contractor, soliciting subscriptions of capital, in the formation of companies to undertake the risk of public improvements, for the benefit of the State, with the hazard of loss and perhaps financial ruin to the first promoters, and offering exemptions from taxation as a consideration, by way of contract, for the acceptance of its proposals. It was legislating in reference to enterprises already undertaken, prosecuted and completed by companies originally thus incorporated, and who, by reason of insolvency, had been stripped of their property by creditors and sentenced by the law to dissolution ; and the purpose of the statute was simply to provide suitable means of incorporating the purchasers, to facilitate their use of the property, in operating it for the benefit of the public, as designed from the beginning. These purchasers had not bought the immunity

now demanded either from the State or the prior possessor. The contract of the creditors would be fully met, on failure of payment of the stipulated debt, by subjecting to sale the property pledged for its payment, with such rights, franchises and privileges only as were necessary for its beneficial use and enjoyment. The immunity from taxation, as we have already said, was not necessarily included in that designation. The debtor corporation, and its creditors combined, could not confer upon the purchasers any rights which were not assignable; and, as no consideration moved to the State for a renewal of the grant, there is no motive for finding, by mere construction and implication, what the words of the law have failed to express. That certainly is not a reasonable interpretation for which no sufficient reason can be assigned.

We conclude, therefore, that the act from which the plaintiff in error derives its corporate existence and powers in West Virginia does not contain a renewal of the grant by exemption from taxation, which, in the 7th section of the act of March 1, 1866, applied to the Chesapeake and Ohio Railroad Company.

Were it otherwise, so that we should be constrained to hold that the language of the act of West Virginia of February 18, 1871, as amended by that of February 20, 1877, had the force of a grant to the plaintiff in error of the exemption of taxation vested by the 7th section of the act of March 1, 1866, in the Chesapeake and Ohio Railroad Company, nevertheless we should be compelled also to hold on distinct grounds, that the exemption thus conferred did not take effect as a contract, protected from repeal by the Constitution of the United States. On the supposition now made, it would still be true, that all the rights of the plaintiff in error, as a corporation, other than the title to the property it acquired by the judicial sale, had their origin in, and depended upon, the acts of 1871–77, under and by which it was created a corporation. It can, in no sense, be regarded as the identical corporate body, of which it became the successor, merely discharged by a process of insolvency from further liability for past debts, which is the view pressed upon us in argument by counsel for plaintiff in error.

The language of the statutes expressly contradicts this assumption. The old corporation in terms is dissolved. The purchasers are as explicitly declared to become a corporation, and its corporate powers are conferred by reference to those which had belonged to their predecessor. The language of the law, the reason involved in its provisions and the precedents of cases heretofore decided by this court, foreclose further controversy on this point. *Shields* v. *Ohio*, 95 U. S. 319; *Railroad Co.* v. *Maine*, 96 U. S. 499; *Railroad Co.* v. *Georgia*, 98 U. S. 359; *L. & N. Railroad Co.* v. *Palmes*, 109 U. S. 244.

That being the case, all grants of corporate powers, rights, privileges, franchises and immunities are taken subject to existing laws, remaining unrepealed. At the time the plaintiff in error became a corporation, ch. 53, § 8, of the Code of West Virginia of 1869, which took effect April 1, 1869, was in force, and has never been repealed. It enacted, among other things, as follows: . . . " And the right is hereby reserved to the Legislature to alter any charter or certificate of incorporation hereafter granted to a joint stock company, and to alter or repeal any law applicable to such company." The Constitution of the State of West Virginia of 1863, Art. 11, § 5, also provides as follows:

" 5. The Legislature shall pass general laws whereby any number of persons associated for mining, manufacturing, insuring, or other purpose useful to the public, excepting banks of circulation and the construction of works of internal improvement, may become a corporation, on complying with the terms and conditions thereby prescribed; and no special act incorporating or granting peculiar privileges to any joint stock company or association, not having in view the issuing of bills to circulate as money or the construction of some work of internal improvement, shall be passed. No company or association, authorized by this section, shall issue bills to circulate as money. No charter of incorporation shall be granted under such general laws, unless the right be reserved to alter or amend such charter at the pleasure of the Legislature, to be declared by general laws. No act to incorporate any bank of circulation or internal improvement company, or to confer additional

privileges on the same, shall be passed, unless public notice of the intended application for such act be given under such regulations as shall be prescribed by law."

The incorporation of the plaintiff in error comes within the provisions, both of the Constitution and of the Code of 1868. Its charter is the law of 1871 as amended by that of 1877. Its certificate of incorporation is the conveyance to it, by the name it has chosen, as a purchaser at the judicial sale, or set forth in some writing signed by such purchaser, and recorded as required. It is a charter granted under a general law, which the Constitution declares to be subject to legislative alteration and amendment. The laws subjecting its property to taxation, and which form the subject of the present controversy, are but the exercise of that legislative discretion, which, as it became the law of the contract itself, cannot be complained of as a breach of the contract.

The conclusion is not weakened by the suggestion that the rights of the plaintiff in error originate in the provisions of the Code of Virginia, referred to, in the act of March 1, 1866, incorporating the Covington and Ohio Railroad Company, and of which the acts of 1871–77 are re-enactments. For even then they would not antedate the provision of the Constitution of 1863, nor avoid the effect of the reasoning of this court in the case of *The St. Louis, Iron Mountain and Southern Railway Co. v. Railroad Commissioners,* 113 U. S. 465. The rights of the plaintiff in error, as a corporation, are determined by the law in force when it came into being, although there is no ground on which it can be contended that there was any legislative contract in the act of March 1, 1866, for the further creation of any corporation in favor of possible purchasers at judicial sales under decrees of foreclosure of deeds of trust or mortgages.

In either view the result is the same, and for the reasons given the decree of the Supreme Court of Appeals of the State of West Virginia is

*Affirmed.*