### DENISON & SHERMAN RAILWAY COMPANY v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Decided November 22, 1902.

1.—Railroads—Right of Way—Streets of City.

Where a railway company has obtained the assent of a city to build its track along a street thereof, as provided by the statute (Revised Statutes, articles 4426, 4438), and has accepted the privilege, the right becomes vested, and can be revoked only in an action to forfeit brought by authority of the State.

2.—Same—Foreclosure Sale—Rights of Purchaser.

Purchasers under a foreclosure sale of the entire roadbed, track, franchises, and charter rights of a railroad company, made under the statute, are vested with all the rights, privileges, and franchises of the foreclosed company, and have the option of continuing the business in the name of the old corporation, or of organizing a new one for that purpose. Rev. Stats., arts. 4549, 4550.

3.—Same—Rights of New Purchasing Corporation.

Where the charter of the new purchasing company empowered it to occupy the streets of the city in question provided it obtained the city's assent thereto, this did not require it to surrender the right of way it had acquired by its purchase of the franchises granted to the sold-out company and reacquire them by the exercise of its charter powers.

4.—Same—Acceptance of Grant.

There was a sufficient acceptance of the city's grant to the use of a street for right of way purposes where the railway company built on a portion of the street, and its successor in title assumed possession of the track and extended it.

5.—Same—Forfeiture of Grant—Injunction.

Where a city has granted right of way along a street to a railroad company which has built its track part of the way thereon and its rights have vested in another company by purchase at foreclosure sale, a local street railway company that has obtained a subsequent grant of a right of way along the same street can not by injunction restrain such purchasing company from completing its track on the ground that it had forfeited the grant by failure to use due diligence, since the State or the city is the proper party to insist on such forfeiture. Bookhout, Associate Justice, dissenting.

Error from the District Court of Grayson County. Tried below before Hon. Rice Maxey.

*Moseley & Smith,* for plaintiff in error.

*E. B. Perkins* and *Head & Dillard,* for defendant in error.

TEMPLETON, Associate Justice.—In 1887, the St. Louis, Arkansas & Texas Railway Company of Texas, a corporation duly incorporated under the laws of this State, constructed a branch line of road from Commerce, in Hunt County, to Sherman, in Grayson County. On February 21, 1887, and before the road was built into Sherman, it applied for and formally obtained from the corporation of the city of Sherman the assent of said city to the construction of its road upon and over East street, one of the public streets of the city, from the point where the line of the Texas & Pacific Railway Company crossed said street to the southern terminus thereof. The assent was unconditional. East street runs north and south and extends from the north boundary line of the city to or near the south boundary thereof, and the Texas & Pacific Railway, which runs east and west, crosses the said street about one-half mile from its northern terminus. The first street south of the Texas & Pacific Railway, running parallel with the railway, is Mulberry; the next is Pecan; the next is Houston; the next is Lamar, and the next is Cherry. The said branch line from Commerce to Sherman was completed to Sherman in the summer of 1887. The depot was located on East street, north of Cherry, and just south of and adjoining Lamar. The track of the road was laid in the center of East street, and extended from the southern terminus of said street to a point just south of and adjoining Houston street. No further extension was made until 1892.

In 1890 a mortgage theretofore given by the St. Louis, Arkansas & Texas Company was duly foreclosed in the Circuit Court of the United States for the Eastern District of Texas, against all the properties, rights, privileges and franchises of the said company. The sale under foreclosure took place in October, 1890, and was confirmed in December following. Conveyance was duly made to the purchaser, the St. Louis Southwestern Railway Company, and in November, 1891, that company took possession of the railway system it had purchased, and has ever since that time operated the same. The said purchasing company was chartered in 1890, and succeeded to the rights, powers, privileges, and franchises of the sold-out company, and by virtue of its purchase acquired all the properties, rights, privileges, and franchises of its predecessor.

In 1892 the new company extended its line of road up East street about 200 feet to a point north of Houston street about 100 yards south of Pecan street.

The Denison & Sherman Railway Company was duly and legally incorporated as a local and suburban railway, under section 2, article 4352, chapter 1, title 94, Sayles' Civil Statutes, with authority to construct and maintain a local suburban railway from the southern boundary of the city of Denison to the northern and eastern boundary of the city of Sherman, a distance of less than ten miles, and in addition thereto five miles in each of said cities. In 1900 the council of the city of Sherman granted to John Crerar, his heirs and assigns,

the right to construct and operate an electric railway over that portion of East street lying between Mulberry and Pecan streets. Soon thereafter the franchise was assigned to the Denison & Sherman Railway Company. In 1901, the said company set its poles and strung its wires on East street between Mulberry and Pecan street, but before it could lay its ties and rails, the St. Louis Southwestern Company extended its track up East street beyond Pecan, and was in the act of building to and across Mulberry, when the Denison & Sherman Company brought this suit against it to enjoin the completion of the work. A temporary injunction was granted, but on final trial the same was dissolved and all relief denied. The Denison & Sherman Company has appealed by writ of error.

The matter in controversy is the right claimed by the St. Louis Southwestern Company to build its road over East street, between Pecan and Mulberry. The principal question in the case is whether the right possessed by the St. Louis, Arkansas & Texas Company to build on East street has been acquired by the defendant in error.

Our laws provide that railway companies may build across and upon the streets of a city, but only on condition of obtaining the assent of the city thereto. Rev. Stats., arts. 4426, 4438. When the consent of the city has been secured, the right of the company to build over and upon the streets named in the concession is complete. No further action is necessary as a prerequisite to a lawful appropriation. When the assent of the city has been given and acted upon, it can not be recalled. When the city consents, in due form, to the use of any particular street or streets by a railway company for right of way purposes, and the company accepts the privilege, the right becomes vested, fixed, and certain, and can only be revoked in an action to forfeit brought by authority of the State. Railway v. Brownsville, 45 Texas, 96; Railway v. Street Railway, 68 Texas, 169; Railway v. Galveston, 90 Texas, 398; Arcata v. Railway, 28 Pac. Rep. (Cal.), 676.

Our laws further provide for the sale, under foreclosure, of the entire roadbed, track, franchises, and chartered rights of a railroad company, and prescribe the rights of the purchasers at such sale. Rev. Stats., arts. 4549, 4550. The purchasers are vested with all the rights, privileges, and franchises of the foreclosed company, and are given the option of continuing the business in the name of the old corporation, or of organizing a new corporation for that purpose.

The right of way in controversy was part of the railway system of the St. Louis, Arkansas & Texas Company, and as such was covered by the lien of the mortgage creditors. It could be legally sold under foreclosure as a part of the said railway system. The fact that the purchasers elected, in the exercise of the option given by the statute, to form a new corporation to take the property, did not have the effect to destroy the title to the right of way which they acquired by their purchase.

The St. Louis Southwestern Company was organized as the successor

of the foreclosed company. It began business with no other properties, rights, privileges, and franchises, than those acquired by its purchase and those conferred by its charter. Every duty of a public nature which lay upon its predecessor was assumed by it, and no obligation in conflict therewith rested upon it. No reason, affecting the public, existed why the said company should not have been permitted to acquire the right of way in controversy, together with the other parts of the railway system to which it belonged. When acquired by the purchasing company, it was held upon exactly the same terms and conditions as those which accompanied the right and title of the foreclosed company.

The concession of the right of way to the original company was not personal in a sense which would preclude the transfer thereof to the successor of that company. The grant was to the company owning and operating the railway system in question, and made the right of way over East street a part of such system. Any company capable under our laws of taking the whole system could take every part thereof, including the said right of way. It is doubtless true that the concession could not have been legally segregated from the system and assigned to an independent company, and that, in this sense, the grant was personal to the company receiving it. But there has been no attempt to make such disposition of the concession, or to use the same for any purpose other than those for which it was granted.

The charter of the St. Louis Southwestern Company conferred upon it the general power to occupy the streets of the city of Sherman for right of way purposes, subject to the condition precedent that it obtained the assent of the city, but that fact did not require it to surrender the right of way over East street which it had acquired by its purchase, and reacquire the same by the exercise of its charter powers.

There is no question that the assent of the city to the use of East street was accepted. The old company built upon and occupied a portion of the street, and the new company, after its purchase, assumed possession of the track which had been placed in the street by its predecessor, and extended the track some distance farther toward the point destined for its terminus. If it has not used reasonable diligence in completing the extension, the State or the city, and not the plaintiff in error, is the proper party to insist on a forfeiture.

The evidence relating to the foreclosure and the sale thereunder is not contained in the statement of facts, the trial judge's conclusions on those issues being accepted by both parties. The judge found that all the properties, rights, privileges, and franchises of the St. Louis, Arkansas & Texas Company passed to and vested in the St. Louis Southwestern Company. The list is certainly comprehensive enough to include the right of way in controversy, and we must assume that the finding is supported by the evidence. It will be further assumed that the St. Louis Southwestern Company was organized for the pur-

pose of taking over the said properties, rights, privileges and franchises in the manner prescribed by law.

Our conclusion is that the trial court did not err in holding that the plaintiff in error was not entitled to an injunction restraining the defendant in error from building its road on East street to a junction with the track of the Texas & Pacific Company.

The trial judge found as a matter of fact that, if the plaintiff in error was permitted to lay its track in the center of East street, it would be impracticable for the defendant in error to exercise its right to build on said street by placing its track between the track of the plaintiff in error and the edge of the street. Complaint is made that the evidence is not sufficient to warrant this finding. After a consideration of the evidence we have concluded that the finding was justified, and that the complaint is without merit. The defendant in error has the right to construct and operate its road over East street to a junction with the Texas & Pacific road, and the city of Sherman can not deprive it of the right by authorizing the plaintiff in error to lay its track at such. place in said street as will render impracticable the exercise of the right.

The judgment is affirmed.

*Affirmed.*

BOOKHOUT, ASSOCIATE JUSTICE (Dissenting).—I am compelled to dissent from the views expressed in the conclusions reached in the opinion by the majority of the court in this case. Owing to the importance of the questions involved, I deem it proper that I briefly express my views thereon.

On the 21st day of February, 1887, the city of Sherman, by ordinance, granted to the St. Louis, Arkansas & Texas Railway Company, a railroad corporation incorporated under the laws of Texas, the right and privilege to construct, operate, and maintain a railway over and along East street, a public street in said city, from the point where the Texas & Pacific railroad crosses said street to the southern terminus thereof. Acting under the privilege granted in said ordinance, said railway company, in June or July, 1887, built its railroad in the center of East street from its southern terminus northward to Cherry street, where it crosses East street, and there established and erected its depot. At the same time it continued its track northward about 200 feet to a point just south of Houston street, another street crossing East street. In this condition it operated its road until December, 1890, when it was sold out.

Said corporation executed certain mortgages on its property, privileges, and franchises to secure certain bonds executed by it, and in June, 1889, suit was filed in the Circuit Court of the United States to foreclose these mortgages. A decree of foreclosure was had on the 24th day of July, 1890, under which a sale was made in October, which was confirmed in December, 1890, and a deed ordered made to the purchaser,

the St. Louis Southwestern Railway Company of Texas, to all rights, properties, privileges, and franchises of the sold-out company. The purchasing company was a corporation incorporated under the laws of Texas.

In 1901, the plaintiff in error, under and by virtue of a valid license granted by the city of Sherman, entered upon East street and erected poles on each side of said street preparatory to the construction of its road thereon. About this time defendant in error, acting solely under the license granted to the St. Louis, Arkansas & Texas Railway Company in 1887, entered upon said street in the nighttime and, without the knowledge or consent of plaintiff in error, began the construction of a railway in the center of East street, between Mulberry and Pecan streets. It was to enjoin defendant in error from building said road that plaintiff in error instituted this suit.

The controlling question presented is: Did the right or privilege to construct, operate and maintain a railroad over that part of East street granted to the St. Louis, Arkansas & Texas Railway Company, and which that company had not used when the foreclosure proceedings were had and the conveyance made to the St. Louis Southwestern Railway Company, pass by such sale to said purchasing company?

The privilege granted by the city of Sherman to the sold-out company to construct, operate, and maintain a railroad over East street was a mere license granted to that company which the city could revoke at any time prior to its acceptance by that company. Nellis, Street Surface Railroads, p. 55, and authorities cited in note 8; 3 Elliott, Railroads, sec. 1079, and authorities cited in note; Belleville v. Railway Co., 152 Ill., 171. The only acceptance of the ordinance granting said license was the construction by the said company of its railroad over that part of East street as above stated, and the erection of its depot at Cherry street. This fact, together with the fact that the company operated its railroad as thus constructed for nearly five years, during which time nothing was done by it indicating an intention to make use of or accept the license to construct and operate a railroad over the remainder of the street stipulated in the ordinance, tends strongly to show that the company did not intend to accept the license granted, but to abandon and forfeit the license, except in so far as it had already constructed its road. This inference is strengthened by the fact that it had constructed its depot on the part used, and, it would seem, fixed the terminus of its road. Under the facts in the case the license did not vest any right in the licensee until it made use of the same. 3 Elliott, Railroads, sec. 1079.

It is true that ordinarily the company must accept the license upon the terms and conditions upon which it is granted, but the city is not complaining that the road stopped at Houston street, instead of building on north to the Texas & Pacific railroad crossing.

Again, by the terms of article 4558, Revised Statutes, it is made the duty of every railroad organized under title 94 of the laws of Texas, as

was the St. Louis, Arkansas & Texas Railway Company, within two years after its incorporation, to "begin the construction of its road and construct, equip, and put in good running order at least ten miles of its proposed road; and if any such railroad corporation, after the first two years, shall fail to construct, equip, and put in good running order at least twenty additional miles of its road each and every succeeding year until the entire completion of its line, such corporation shall, in either of such cases, forfeit its corporate existence, and its powers shall cease as far as relates to that portion of said road then unfinished, and shall be incapable of resumption by any subsequent act of incorporation." This act is self executing, and any railroad corporation organized under title 94 of the laws of this State failing to comply with its terms forfeits its corporate existence as to the unfinished part of its road, without the necessity of a judicial declaration thereof.

The St. Louis, Arkansas & Texas Railway Company, in 1890, was insolvent, and a foreclosure was had upon its property and franchises, and the same were ordered sold, and were sold to the St. Louis Southwestern Railway Company, a corporation created and chartered under the laws of the State of Texas prior thereto. Said sale stripped the company of all its property, and, it seems, deprived it of the ability to extend its road. The stockholders of the sold-out company never attempted, after the sale of its property, to organize under the charter of the sold-out company, or perform any corporate act thereunder. The record does not show that the purchaser of the property of the sold-out company ever attempted to organize under the charter of the sold-out company, even if it be conceded (which is not) that a purchasing corporation was entitled to do so under the terms of article 4549 of the Revised Statutes.

By the terms of article 4558, the failure of the St. Louis, Arkansas & Texas Railway Company, for nearly five years, to make use of the license granted to it, and its insolvency, and the sale of all its property, and the failure of the stockholders to reorganize after such sale, or make use of said license for nearly fourteen years after the granting thereof, at the end of which time the city granted the license to another company, which last named company entered upon the street and began the construction of its road, operated as a forfeiture of the license granted to said St. Louis, Arkansas & Texas Railway Company in so far as it had not constructed its road and used the same. Sayles' Civ. Stats., art. 4558; Railway v. Railway, 22 S. W. Rep., 107; Bywaters v. Railway, 73 Texas, 624; Railway v. State, 81 Texas, 572; Mayor. v. Railway, 84 Texas, 590; Railway v. Railway, 63 Texas, 529; same case, 65 Texas, 503; Railway v. Railway, 45 Cal., 373; Railway v. Johnson, 49 Mich., 148; Railway v. Storey, 73 Ill., 541; Chicago v. Railway, 105 Ill., 73; Railway v. Nave, 38 Kan., 744; City of Detroit v. Railway, 37 Mich., 558.

The city of Sherman seems to have taken this view of the matter, and intended the last grant as a revocation of its former grant to the St. Louis, Arkansas & Texas Railway Company, in so far as said com-

pany had not constructed its road over said street. This view is strengthened by the evidence, which fairly shows that it is not practicable for both plaintiff in error and defendant in error to construct and operate their respective roads over said street, and the right was given to the plaintiff in error to place its road in the center of the street.

Conceding, for the purposes of this discussion, that the acts of the sold-out company amounted to an acceptance of the license in its entirety, and that the same had not been abandoned or forfeited, did the privilege which the sold-out company had to construct and operate its road over East street between Houston street and the Texas & Pacific crossing pass to the defendant in error by reason of the foreclosure proceedings?

In the opinion of the majority of the court stress is laid upon the provisions of articles 4549 and 4550, Revised Statutes, as vesting the rights, privileges, and franchises of the sold-out company in the purchaser under the foreclosure sale. Article 4549 makes provision whereby the purchaser of the sold-out company "shall be entitled" to organize under the charter of the sold-out company, and exercise the powers, privileges, and franchises of the sold-out company, which was not done in this case, and hence I can not see that this article has any application. Article 4550 authorizes the purchaser to form a new corporation, with all the powers and rights incident thereto under the laws of the State. The purchaser in this case, at the time of its purchase, was a corporation chartered under the laws of the State. It was a new corporation, and, by virtue of its charter, it took all the powers and privileges conferred by the laws of this State upon chartered railroads. Article 4550 does not vest in the new company the rights, privileges, and franchises of the old company, but makes provision by virtue of which the new company may acquire the road and be entitled to all the powers and privileges conferred by the laws of the State upon chartered railroads. It is not by virtue of this article, but by virtue of its purchase, that the new company took title to the property. Such was the holding of this court in Thayer v. Wathen, 17 Texas Civil Appeals, 383, 44 Southwestern Reporter, 906, in which a writ of error was refused. See also, 2 Morawetz on Corp., secs. 924, 925; Railway v. Berry, 112 U. S., 609.

The question, narrowed down, is: Do the words used in the mortgage embrace such license or privilege, and if so, did such right pass to the purchaser by the foreclosure proceedings and the conveyance made thereunder? The property mortgaged is designated in the mortgage as "its railway properties, privileges, and franchises." In discussing the meaning of the word "franchise," Mr. Justice Field, in the case of Morgan v. Louisiana, 93 United States, 223, uses the following language: "Much confusion of thought has arisen in this case, and in similar cases, from attaching a vague and undefined meaning to the term 'franchises.' It is often used as synonymous with rights, privileges, and immunities, though of a personal and temporary character;

Vol. 30 Civil—31.

so that, if any one of these exists, it is loosely term a 'franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operation of the corporation, and without which its road and works would be of little value; such as a franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. * * * The former may be conveyed to a purchaser of the road as a part of the property of the company; the latter is personal and incapable of transfer without express statutory direction." This language has been repeatedly approved in later opinions of that court. Railway v. Miller, 114 U. S., 176.

We have no statutory authority authorizing a conveyance of a license granted by a city to construct a railroad over one of its streets. Nor is there any equivalent provision in the statute authorizing the conveyance of such a license. Our statute authorizes a railroad to mortgage "its property and franchises." This language does not expressly, or by implication, authorize the company to mortgage such a license. In so far as said company had constructed its railroad over East street and made use of the license, the same was necessary for the use of the railroad, and without it the road could not be operated. It was necessary to the preservation, use and operation of the railroad, and of necessity passed to the purchaser of the property. Railway v. Miller, 114 U. S., 121. The unused privilege granted by the city of Sherman to the St. Louis, Arkansas & Texas Railway Company to construct its railroad on East street was not necessary or incidental to the existence, preservation, or use of the property mortgaged, and purchased by the defendant in error, and hence, in my opinion, it did not pass by the conveyance of the railroad.

Nor does the fact that the purchasing company extended the road about 200 feet and across Houston street, after its purchase, affect the question. If the privilege granted to the sold-out company did not pass to the new company by its purchase, such extension becomes immaterial.

Again, the ordinance granted the franchise to the St. Louis, Arkansas & Texas Railway Company. The grant is not to that company, "its successors and assigns." By the terms of the ordinance the grant is made a privilege personal to that company. Such personal privilege would not pass by a conveyance of the property and franchises of the company. It is held that immunity from taxation of a railroad company is personal to that company, and does not pass by a conveyance of its property. Railway v. Miller, 114 U. S., 176; Pickard v. Railway, 130 U. S., 637. See also vols. 9, p. 944, and 10, p. 1046, Rose's Notes on U. S. Reps.