I am compelled to dissent from the views expressed in the conclusions reached in the opinion by the majority of the court in this case. Owing to the importance of the questions involved, I deem it proper that I briefly express my views thereon.
On the 21st day of February, 1887, the city of Sherman, by ordinance, granted to the St. Louis, Arkansas Texas Railway Company, a railroad corporation incorporated under the laws of Texas, the right and privilege to construct, operate, and maintain a railway over and along East street, a public street in said city, from the point where the Texas Pacific railroad crosses said street to the southern terminus thereof. Acting under the privilege granted in said ordinance, said railway company, in June or July, 1887, built its railroad in the center of East street from its southern terminus northward to Cherry street, where it crosses East street, and there established and erected its depot. At the same time it continued its track northward about 200 feet to a point just south of Houston street, another street crossing East street. In this condition it operated its road until December, 1890, when it was sold out.
Said corporation executed certain mortgages on its property, privileges, and franchises to secure certain bonds executed by it, and in June, 1889, suit was filed in the Circuit Court of the United States to foreclose these mortgages. A decree of foreclosure was had on the 24th day of July, 1890, under which a sale was made in October, which was confirmed in December, 1890, and a deed ordered made to the purchaser, *Page 479 
the St. Louis Southwestern Railway Company of Texas, to all rights, properties, privileges, and franchises of the sold-out company. The purchasing company was a corporation incorporated under the laws of Texas.
In 1901, the plaintiff in error, under and by virtue of a valid license granted by the city of Sherman, entered upon East street and erected poles on each side of said street preparatory to the construction of its road thereon. About this time defendant in error, acting solely under the license granted to the St. Louis, Arkansas Texas Railway Company in 1887, entered upon said street in the nighttime and, without the knowledge or consent of plaintiff in error, began the construction of a railway in the center of East street, between Mulberry and Pecan streets. It was to enjoin defendant in error from building said road that plaintiff in error instituted this suit.
The controlling question presented is: Did the right or privilege to construct, operate and maintain a railroad over that part of East street granted to the St. Louis, Arkansas Texas Railway Company, and which that company had not used when the foreclosure proceedings were had and the conveyance made to the St. Louis Southwestern Railway Company, pass by such sale to said purchasing company?
The privilege granted by the city of Sherman to the sold-out company to construct, operate, and maintain a railroad over East street was a mere license granted to that company which the city could revoke at any time prior to its acceptance by that company. Nellis, Street Surface Railroads, p. 55, and authorities cited in note 8; 3 Elliott, Railroads, sec. 1079, and authorities cited in note; Belleville v. Railway Co., 152 Ill. 171. The only acceptance of the ordinance granting said license was the construction by the said company of its railroad over that part of East street as above stated, and the erection of its depot at Cherry street. This fact, together with the fact that the company operated its railroad as thus constructed for nearly five years, during which time nothing was done by it indicating an intention to make use of or accept the license to construct and operate a railroad over the remainder of the street stipulated in the ordinance, tends strongly to show that the company did not intend to accept the license granted, but to abandon and forfeit the license, except in so far as it had already constructed its road. This inference is strengthened by the fact that it had constructed its depot on the part used, and, it would seem, fixed the terminus of its road. Under the facts in the case the license did not vest any right in the licensee until it made use of the same. 3 Elliott, Railroads, sec. 1079.
It is true that ordinarily the company must accept the license upon the terms and conditions upon which it is granted, but the city is not complaining that the road stopped at Houston street, instead of building on north to the Texas Pacific railroad crossing.
Again, by the terms of article 4558, Revised Statutes, it is made the duty of every railroad organized under title 94 of the laws of Texas, as *Page 480 
was the St. Louis, Arkansas Texas Railway Company, within two years after its incorporation, to "begin the construction of its road and construct, equip, and put in good running order at least ten miles of its proposed road; and if any such railroad corporation, after the first two years, shall fail to construct, equip, and put in good running order at least twenty additional miles of its road each and every succeeding year until the entire completion of its line, such corporation shall, in either of such cases, forfeit its corporate existence, and its powers shall cease as far as relates to that portion of said road then unfinished, and shall be incapable of resumption by any subsequent act of incorporation." This act is self executing, and any railroad corporation organized under title 94 of the laws of this State failing to comply with its terms forfeits its corporate existence as to the unfinished part of its road, without the necessity of a judicial declaration thereof.
The St. Louis, Arkansas Texas Railway Company, in 1890, was insolvent, and a foreclosure was had upon its property and franchises, and the same were ordered sold, and were sold to the St. Louis Southwestern Railway Company, a corporation created and chartered under the laws of the State of Texas prior thereto. Said sale stripped the company of all its property, and, it seems, deprived it of the ability to extend its road. The stockholders of the sold-out company never attempted, after the sale of its property, to organize under the charter of the sold-out company, or perform any corporate act thereunder. The record does not show that the purchaser of the property of the sold-out company ever attempted to organize under the charter of the sold-out company, even if it be conceded (which is not) that a purchasing corporation was entitled to do so under the terms of article 4549 of the Revised Statutes.
By the terms of article 4558, the failure of the St. Louis, Arkansas Texas Railway Company, for nearly five years, to make use of the license granted to it, and its insolvency, and the sale of all its property, and the failure of the stockholders to reorganize after such sale, or make use of said license for nearly fourteen years after the granting thereof, at the end of which time the city granted the license to another company, which last named company entered upon the street and began the construction of its road, operated as a forfeiture of the license granted to said St. Louis, Arkansas Texas Railway Company in so far as it had not constructed its road and used the same. Sayles' Civ. Stats., art. 4558; Railway v. Railway, 22 S.W. Rep., 107; Bywaters v. Railway, 73 Tex. 624; Railway v. State, 81 Tex. 572
[81 Tex. 572]; Mayor v. Railway, 84 Tex. 590; Railway v. Railway, 63 Tex. 529; same case,65 Tex. 503; Railway v. Railway, 45 Cal. 373; Railway v. Johnson, 49 Mich. 148; Railway v. Storey,73 Ill. 541; Chicago v. Railway, 105 Ill. 73; Railway v. Nave,38 Kan. 744; City of Detroit v. Railway, 37 Mich. 558.
The city of Sherman seems to have taken this view of the matter, and intended the last grant as a revocation of its former grant to the St. Louis, Arkansas Texas Railway Company, in so far as said company *Page 481 
had not constructed its road over said street. This view is strengthened by the evidence, which fairly shows that it is not practicable for both plaintiff in error and defendant in error to construct and operate their respective roads over said street, and the right was given to the plaintiff in error to place its road in the center of the street.
Conceding, for the purposes of this discussion, that the acts of the sold-out company amounted to an acceptance of the license in its entirety, and that the same had not been abandoned or forfeited, did the privilege which the sold-out company had to construct and operate its road over East street between Houston street and the Texas Pacific crossing pass to the defendant in error by reason of the foreclosure proceedings?
In the opinion of the majority of the court stress is laid upon the provisions of articles 4549 and 4550, Revised Statutes, as vesting the rights, privileges, and franchises of the sold-out company in the purchaser under the foreclosure sale. Article 4549 makes provision whereby the purchaser of the sold-out company "shall be entitled" to organize under the charter of the sold-out company, and exercise the powers, privileges, and franchises of the sold-out company, which was not done in this case, and hence I can not see that this article has any application. Article 4550 authorizes the purchaser to form a new corporation, with all the powers and rights incident thereto under the laws of the State. The purchaser in this case, at the time of its purchase, was a corporation chartered under the laws of the State. It was a new corporation, and, by virtue of its charter, it took all the powers and privileges conferred by the laws of this State upon chartered railroads. Article 4550 does not vest in the new company the rights, privileges, and franchises of the old company, but makes provision by virtue of which the new company may acquire the road and be entitled to all the powers and privileges conferred by the laws of the State upon chartered railroads. It is not by virtue of this article, but by virtue of its purchase, that the new company took title to the property. Such was the holding of this court in Thayer v. Wathen, 17 Texas Civil Appeals, 383, 44 Southwestern Reporter, 906, in which a writ of error was refused. See also, 2 Morawetz on Corp., secs. 924, 925; Railway v. Berry, 112 U.S. 609.
The question, narrowed down, is: Do the words used in the mortgage embrace such license or privilege, and if so, did such right pass to the purchaser by the foreclosure proceedings and the conveyance made thereunder? The property mortgaged is designated in the mortgage as "its railway properties, privileges, and franchises." In discussing the meaning of the word "franchise," Mr. Justice Field, in the case of Morgan v. Louisiana, 93 United States, 223, uses the following language: "Much confusion of thought has arisen in this case, and in similar cases, from attaching a vague and undefined meaning to the term `franchises.' It is often used as synonymous with rights, privileges, and immunities, though of a personal and temporary character; *Page 482 
so that, if any one of these exists, it is loosely term a `franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operation of the corporation, and without which its road and works would be of little value; such as a franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. * * * The former may be conveyed to a purchaser of the road as a part of the property of the company; the latter is personal and incapable of transfer without express statutory direction." This language has been repeatedly approved in later opinions of that court. Railway v. Miller, 114 U.S. 176.
We have no statutory authority authorizing a conveyance of a license granted by a city to construct a railroad over one of its streets. Nor is there any equivalent provision in the statute authorizing the conveyance of such a license. Our statute authorizes a railroad to mortgage "its property and franchises." This language does not expressly, or by implication, authorize the company to mortgage such a license. In so far as said company had constructed its railroad over East street and made use of the license, the same was necessary for the use of the railroad, and without it the road could not be operated. It was necessary to the preservation, use and operation of the railroad, and of necessity passed to the purchaser of the property. Railway v. Miller, 114 U.S. 121. The unused privilege granted by the city of Sherman to the St. Louis, Arkansas Texas Railway Company to construct its railroad on East street was not necessary or incidental to the existence, preservation, or use of the property mortgaged, and purchased by the defendant in error, and hence, in my opinion, it did not pass by the conveyance of the railroad.
Nor does the fact that the purchasing company extended the road about 200 feet and across Houston street, after its purchase, affect the question. If the privilege granted to the sold-out company did not pass to the new company by its purchase, such extension becomes immaterial.
Again, the ordinance granted the franchise to the St. Louis, Arkansas Texas Railway Company. The grant is not to that company, "its successors and assigns." By the terms of the ordinance the grant is made a privilege personal to that company. Such personal privilege would not pass by a conveyance of the property and franchises of the company. It is held that immunity from taxation of a railroad company is personal to that company, and does not pass by a conveyance of its property. Railway v. Miller, 114 U.S. 176; Pickard v. Railway, 130 U.S. 637. See also vols. 9, p. 944, and 10, p. 1046, Rose's Notes on U.S. Reps. *Page 483